[No. 13968.   In Bank. — June 18, 1892.]

# WILLIAM S. BARNES, RESPONDENT, *v.* HATTIE A. SMITH BARNES, APPELLANT.

DISMISSAL OF ACTION — ORDER OF ATTORNEY FOR PLAINTIFF — JUDGMENT — JURISDICTION — APPEARANCE OF DEFENDANT. — The filing, by a plaintiff in an action, of a paper stating that the action is thereby dismissed, simply amounts to an order for the dismissal of the action upon which the clerk is authorized to enter a judgment of dismissal, and does not of itself operate as a dismissal of the action; and the court retains jurisdiction of the action until the judgment of dismissal is entered by the clerk; and if no judgment is entered, and the defendant appears and answers after the order for dismissal is filed, the court has jurisdiction to render judgment in the cause for the plaintiff.

DIVORCE — EXTREME CRUELTY — MENTAL SUFFERING — CHARGES OF PERSONAL IMPURITY — EFFECT UPON HEALTH. — A finding that the defendant, in an action for divorce upon the ground of extreme cruelty, inflicted grievous mental suffering upon the plaintiff, by imputing to him, in the presence of others, the grossest immorality and personal impurity, is a sufficient finding of extreme cruelty to sustain a judgment for the plaintiff. It is not necessary to allege or find that the charges complained of had an injurious effect upon the health of the plaintiff.

ID. — DEFINITIONS OF EXTREME CRUELTY. — Any unjustifiable conduct upon the part of either of the spouses, which so grievously wounds the feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the health, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes extreme cruelty.

ID. — GAUGE OF MENTAL SUFFERING. — It is not necessary that there should be any exact measure or scale by which to gauge purely mental susceptibilities and sufferings.

ID. — QUESTION OF FACT — DELICACY OF FEELING. — Whether in any case there has been inflicted such grievous mental suffering as will warrant the granting of a divorce upon the ground of extreme cruelty, is a pure question of fact, to be deduced from all the circumstances of each particular case, keeping in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party; and no arbitrary rule of law as to what particular probative facts shall exist in order to justify a finding of the ultimate fact of its existence can be given.

CONTINUANCE — DISCRETION — GOOD FAITH OF APPLICATION. — Applications for continuance are addressed to the sound discretion of the trial court, and its action will not be disturbed on appeal unless the record affirmatively shows that it abused its discretion. There is no abuse of discretion in refusing to grant a continuance if the circumstances cast suspicion on the good faith of the application, and induce the belief that it was intended only for delay.

ID. — LIBERALITY OF DISCRETION IN DIVORCE CASES — NECESSITY OF GOOD FAITH AND DILIGENCE. — While the trial court should be most liberal in granting continuances in divorce cases, because the public as well as the parties to the action are interested in the result of the suit, a defendant

must be held to the exercise of good faith and diligence, and cannot be heard to complain if the failure to present his defense results from an attempt to subordinate the business of the court to his own business engagements and convenience.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. T. Baggett, E. L. Campbell,* and *W. W. Foote,* for appellant.

The court erred in granting plaintiff leave to withdraw his dismissal, and had no jurisdiction to proceed with the trial of the cause. (*Thompson* v. *Spraig,* 66 Cal. 350; *Merritt* v. *Campbell,* 47 Cal. 542; *Grimes* v. *Chamberlain,* 27 Neb. 605.) The court erred in refusing the defendant a continuance. The discretion confided to the court is a legal discretion, to be exercised, not capriciously or arbitrarily, but by fixed legal principles, and in a manner to subserve, and not to impede or defeat, the ends of substantial justice. (*Bailey* v. *Taaffe,* 29 Cal. 424; *Lybecker* v. *Murray,* 58 Cal. 189; *Stringer* v. *Davis,* 30 Cal. 322; *Purington* v. *Frank,* 2 Iowa, 565; *State* v. *Painter,* 40 Iowa, 298; *Ex parte Marks,* 49 Cal. 681; *Ex parte Hoge,* 48 Cal. 5; *N. G. Bank* v. *Colwell,* 8 N. Y. Sup. 380; *Carter* v. *Wharton,* 82 Va. 264; *Harries* v. *Roebuck,* 47 N. J. L. 228; *Wright* v. *Lacy,* 22 Minn. 466.) Courts are extremely liberal in granting adjournments, even when simply expedient, and much more when any necessity exists. (*Turner* v. *Morrison,* 85 Cal. 251.) The public has an interest in such cases, and the court should afford both parties the fullest possible hearing in such matters. (*McBlain* v. *McBlain,* 77 Cal. 509; *Wadsworth* v. *Wadsworth,* 81 Cal. 183; 15 Am. St. Rep. 38; *Cottrell* v. *Cottrell,* 83 Cal. 460; Stewart on Marriage and Divorce, sec. 327.) The finding of the court that the defendant inflicted upon the plaintiff grievous mental suffering is wholly without

support from, and is wholly contrary to, the evidence produced. This is a conclusion of law. (*Waldron* v. *Waldron*, 85 Cal. 251.)

*W. S. Hinkle*, for Respondent.

By the mere filing of the order of dismissal the action was not dismissed so as to deprive the court of control over the cause, as a judgment of dismissal was never entered thereon. (*Page* v. *Superior Court*, 76 Cal. 372; *Page* v. *Page*, 77 Cal. 83; *Estate of Cook*, 77 Cal. 220–232; 11 Am. St. Rep. 267.) The affidavit of an attorney of a party that he is "informed and believes" as to any fact in issue is not evidence which could properly have any persuasive influence on the court. (*Barnard* v. *Wilson*, 66 Cal. 253; *People* v. *Jenkins*, 56 Cal. 5; *Pope* v. *Dalton*, 31 Cal. 218.) The whole case showed that the defendant wished the court to continue the trial of a case which had been three times set for trial, because she was traveling with an opera bouffe company, which was expected to bring up in San Francisco some time during the month of January, and that her claim of sickness was a transparent sham. There was no abuse of discretion in proceeding with the trial under such a state of facts. (*Frank* v. *Brady*, 8 Cal. 47; *Musgrove* v. *Perkins*, 9 Cal. 212; *Canal Co.* v. *Chapman*, 11 Cal. 161; *Griffin* v. *Polhemus*, 20 Cal. 181; *People* v. *De Lacy*, 28 Cal. 590; *People* v. *Gaunt*, 23 Cal. 156; *Hastings* v. *Hastings*, 31 Cal. 95; *Wilkinson* v. *Parrott*, 32 Cal. 102; *Harper* v. *Lamping*, 33 Cal. 641; *Carey* v. *P. & C. Pet. Co.*, 33 Cal. 694; *People* v. *Mortimer*, 46 Cal. 114; *Kern Valley Bank* v. *Chester*, 55 Cal. 49.) The false and malicious charges made by the defendant against the plaintiff entitled him to the relief awarded by the court. (*De Haley* v. *De Haley*, 67 Cal. 24; 74 Cal. 491; 5 Am. St. Rep. 460; *Powelson* v. *Powelson*, 22 Cal. 358; 1 Bishop on Marriage and Divorce, 730; *D'Aguilar* v. *D'Aguilar*, 1 Hagg. Ecc. 773; *Ciocci* v. *Ciocci*, 26 Eng. L. & Eq. 604; *Holyoke* v. *Holyoke*, 78 Me. 404; *Popkin* v. *Popkin*, 1 Hagg. Ecc. 765.) While

it is to be observed that causes both physical and mental render the infliction of cruelty by the wife on the husband less common than by him on her, yet the law, equally in England and in most of our states, gives the same relief to a complaining husband as to a complaining wife. (*Kirkman* v. *Kirkman*, 1 Hagg. Const. 409; *Waning* v. *Waning*, 1 Phillim. 132; 1 Eng. Ecc. 210; *White* v. *White*, 1 Swab. & T. 591; *Lynch* v. *Lynch*, 33 Md. 328; *Kempf* v. *Kempf*, 34 Mo. 211; *Jones* v. *Jones*, 66 Pa. St. 494.)

The COURT. — Action for divorce upon the ground of extreme cruelty. Judgment was entered in favor of plaintiff, and the defendant appeals.

1. After the filing of the complaint in this action, and before any appearance on the part of defendant, the attorney for plaintiff filed with the clerk of the superior court a paper properly entitled in the cause, and stating, " The above-entitled action is hereby dismissed," but no judgment of dismissal was entered. It is claimed by appellant that upon the filing of this paper the court lost jurisdiction of the action, and that jurisdiction was not restored by the subsequent appearance and answer of defendant. This objection to the jurisdiction of the court was made in various forms in the court below, and overruled. The court did not err in its rulings upon this point. The filing of the paper referred to was in effect an order for a dismissal of the action, and would have been sufficient authority for the clerk to have entered a judgment of dismissal, but until the entry of such judgment the court retained jurisdiction of the case. (*Page* v. *Superior Court*, 76 Cal. 372; *Acock* v. *Halsey*, 90 Cal. 215; *Rochat* v. *Gee*, 91 Cal. 355.)

2. It is urged by appellant that the facts alleged in the complaint and found by the court do not entitle plaintiff to the decree, which he obtained, dissolving the marriage which existed between him and appellant. The cruelty alleged and found is, that appellant inflicted grievous mental suffering upon plaintiff, by imputing to

him, in the presence of others, the grossest immorality and personal impurity. It is not necessary to state here, with any particularity, the language by which these charges were made. It is sufficient to say that such charges, if false, were well calculated to bring upon a person of ordinary sensibility grievous mental suffering. But it is not alleged in the complaint, nor is it found by the court, that the charges of which plaintiff complains had any injurious effect upon his health, and for this reason it is claimed that the complaint and findings do not support the judgment, under the law as declared by this court in *Waldron* v. *Waldron*, 85 Cal. 251. It was held in that case that a finding to the effect that the defendant had inflicted upon the plaintiff therein grievous mental suffering, but without injury to her health, was not equivalent to a finding of extreme cruelty upon the part of the defendant, and would not sustain a judgment for divorce upon that ground; and in discussing the question as to what constitutes such extreme cruelty as will justify a divorce, the court said: "Although the character of the ill treatment, whether it operates directly upon the body, or primarily upon the mind alone. and all the attending circumstances, are to be considered for the purpose of estimating the degree of the cruelty, yet the final test of the sufficiency, as a cause of divorce, must be its actual or reasonably apprehended injurious effect upon the body or health of the complaining party." And it was further said in that case, "that the practical view of the law is, that a degree of cruelty which cannot be perceived to injure the body or the health of the body '*can* be practically endured,' ▪ *must* be endured if there is no other remedy than by divorce; because no 'scale' by which to gauge the purely mental susceptibilities and sufferings has yet been invented or discovered, except such as indicate the degrees thereof by their *perceptible* effects upon the physical organization of the body."

Tested by this rule, it must be conceded that the findings here are insufficient to sustain the judgment. But

the case from which we have just quoted was decided by
a bare majority of the court as it was then constituted,
and while the conclusion there reached finds support in
many earlier cases cited in the opinion, we do not think
it can be sustained without a wide departure from the
letter and spirit of section 94 of the Civil Code of this
state, which declares: " Extreme cruelty is the infliction
of grievous bodily injury *or* grievous mental suffering
upon the other by one party to the marriage." The
language of this section is plain, and cannot be properly
construed as declaring that only grievous bodily injury
shall constitute extreme cruelty, and that extreme mental
suffering which is not shown to have injuriously affected
the body or health of the complaining party is not suffi-
cient. The tendency of modern decisions, reflecting the
advanced civilization of the present age, is to view mar-
riage from a different standpoint than as a mere physical
relation. It is now more wisely regarded as a union
affecting the mental and spiritual life of the parties to it,
— a relation designed to bring to them the comfort and
felicities of home life, and between whom, in order to
fulfill such design, there should exist mutual sentiments
of love and respect. " It was formerly thought that to
constitute extreme cruelty, such as would authorize the
granting of a divorce, physical violence is necessary; but
the modern and better considered cases have repudiated
this doctrine as taking too low and sensual a view of the
marriage relation, and it is now very generally held that
any unjustifiable conduct on the part of either the hus-
band or wife, which so grievously wounds the feelings of
the other, or so utterly destroys the peace of mind of the
other, as to seriously impair the health, . . . . *or such as
utterly destroys the legitimate ends and objects of matrimony,
constitutes extreme cruelty under the statutes."* ( *Carpenter*
v. *Carpenter*, 30 Kan. 744; 46 Am. Rep. 108.) Section
94 of the Civil Code is in harmony with the law as thus
stated, and under it the infliction of grievous mental
suffering is extreme cruelty. It may be true that there
is " no scale by which to gauge the purely mental sus-

ceptibilities and sufferings " of another, nor is it necessary that there should be any such exact measure. The common judgment of mankind recognizes the fact that there may be unfounded charges and cruel imputations which are not more easily borne than physical bruises, and the necessary effect of which is to cause great mental distress to the person against whom they are made. Whether in any given case there has been inflicted this " grievous mental suffering " is a pure question of fact, to be deduced from all the circumstances of each particular case, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party; and no arbitrary rule of law as to what particular probative facts shall exist in order to justify a finding of the ultimate facts of its existence can be given. As said by Mr. Justice McFarland, in his dissenting opinion in *Waldron* v. *Waldron,* 85 Cal. 251: " Every case where a divorce is sought on this ground must depend upon its own particular facts; and a correct decision must depend — as most cases depend — upon the sound sense and judgment of juries and courts."

We cannot say in this case that the court was not fully justified in finding that the conduct of the defendant inflicted upon plaintiff grievous mental suffering, as alleged in the complaint.

The evidence was sufficient to sustain the finding of the court that plaintiff had been a resident of the state for more than six months prior to the commencement of the action.

The refusal of the court to grant a continuance cannot be held to be an abuse of discretion. In *Kneebone* v. *Kneebone,* 83 Cal. 647, the court said: " It is settled law in this state that applications for continuance are addressed to the sound discretion of the trial court, and its action will not be disturbed on appeal, unless the record affirmatively shows that it abused its discretion. In *Musgrove* v. *Perkins,* 9 Cal. 212, the court, per Field, J., said: ' The granting or refusing a continuance rests in the sound discretion of the court below, and its ruling

will not be revised, except for the most cogent reasons. The court below is apprised of all the circumstances of the case, and the previous proceedings, and is therefore better able to decide upon the propriety of granting the application than the appellate court, and when it exercises a reasonable and not an arbitrary discretion, its action will not be disturbed.' And similar language has been used in many subsequent decisions." This action was commenced on May 14, 1889. The defendant was personally served with summons nine days later, and on June 21st she appeared and demurred to the complaint. On July 28th the demurrer was withdrawn, and the defendant was allowed thirty days in which to answer the complaint. She procured further extensions of time, and filed an answer and cross-complaint on October 15, 1889. An application was made on the 16th of October to have the cause set for trial, but by reason of the illness of the presiding judge, the hearing of the motion was postponed until the 25th, when the cause was set for trial on December 2d following. Counsel for defendant objected to the order of the court setting the case for trial on December 2d, on the ground that it would be necessary to take the depositions of witnesses residing in New York; that defendant was an actress by profession, and dependent upon herself for a living, and that her senior counsel would be necessarily absent from the state for about a month. Counsel for plaintiff stated that he would waive service of notice for the issuance of the commission to take depositions, and thereupon the order was made as stated. An application was made on December 2d for a continuance until the fifteenth day of January, 1890, and the cause was continued until the sixth day of December, 1889, at which time the motion for a continuance to January 15th was made and denied. The commission to take depositions was not issued until the eighteenth day of November, 1889. When the cause came on for trial, December 6, 1889, counsel for defendant filed an affidavit, and in connection therewith several letters and telegrams received from the defendant,

as a basis for his motion for a further continuance until January 15th. It is apparent from the language of the court in denying this last motion that it believed the defendant was not acting in good faith, but was endeavoring to postpone the action of the court until her business engagements would bring her to San Francisco, and we cannot say that such conclusion may not have been fairly drawn from all the circumstances of the case. Defendant had actual notice more than six months prior to the day of the trial of the charge which plaintiff made against her, and the cause was at issue nearly two months before the trial occurred. It appears from the letters and telegrams that the defendant was at Minneapolis, Minnesota, November 15th; Milwaukee, Wisconsin, November 19th; Marshalltown, Iowa, November 22d; Des Moines, Iowa, November 23d; Kansas City, November 26th and 27th; St. Louis, December 2d, 4th, and 6th; and was informed at these times of all that had occurred. The court doubtless concluded that if the defendant could thus travel about in the East she was able to make the trip to San Francisco in time to be present at the trial; and as stated before, we cannot say that its order was an abuse of discretion. It has been held here that there is no abuse of discretion in refusing a motion for a continuance if the circumstances cast suspicion on the good faith of the application, and induce the belief that it was intended only for delay. (*People* v. *Mortimer*, 46 Cal. 120.)

While the trial court should be most liberal in granting continuances in divorce cases, because the public as well as the parties to the action are interested in the result of the suit, a defendant must be held to the exercise of good faith and diligence, and cannot be heard to complain if the failure to present his defense results from an attempt to subordinate the business of the court to his own business engagements and convenience.

The judgment and order are affirmed.

DE HAVEN, J., dissenting. — I dissent from the judg-

ment, and from so much of the foregoing opinion as holds that the action of the court below in denying the motions of defendant for a continuance was not an abuse of discretion.

The defendant is a non-resident of the state, and her answer was filed October 15, 1889, and on the 25th of that month the court, on motion of plaintiff, and against the objection of defendant, set the case for trial on December 2, 1889; and afterwards the time for trial was continued by consent until December 6, 1889, without prejudice to the right of defendant to move for a further continuance. Upon that day the defendant moved for a continuance of the case until January 15, 1890. The motion was upon the ground that depositions of certain witnesses had not been returned, and also for the alleged reason that defendant was ill at Kansas City, Missouri, and unable to come to San Francisco without endangering her prospects for recovery. This motion was supported by the affidavit of one of her attorneys, which stated, among other things, "that affiant is further informed by telegrams received from defendant on the twenty-third, twenty-sixth, and thirtieth days of November, 1889, and also from affidavits of Dr. J. C. Rogers, hereto attached, and affiant believes, and thereupon states, that defendant is now ill at Kansas City, Missouri, and unable to travel without danger to her health." Accompanying this was the affidavit of defendant herself and her physician, to the same effect. Many telegrams from defendant to her attorney were also produced. I am unable to find anything in the record which directly contradicts the facts stated in these affidavits in regard to the state of defendant's health. That which comes the nearest doing so is found in the statement or affidavit of plaintiff's father, wherein it is said: "I am informed and believe that she is now performing as an opera bouffe artist with a company, and has been doing so for many months, and is not too sick to come here or travel." Manifestly, this is not an assertion that the defendant was not in fact sick, as stated in the affidavits of herself

and physician; but it is argued that the telegrams dated
at different places show that she was traveling with her
company, and therefore that she was not sick. These
telegrams certainly show that she had not severed her
connection with the company, and that she was able to
travel between the places, but it does not necessarily fol-
low, because she did this, that it would have been prudent
for her to attempt the longer overland journey. The
motion for a continuance until January 15th was denied,
and upon the next day the defendant moved for a con-
tinuance for one week. The motion was made upon the
same affidavits, and additional telegrams and a letter
from defendant. One telegram was dated upon the
previous day, December 6th, and is as follows: "Allow
sufficient time for traveling. Last notice too short.
Fight for continuance. Telegraph early." The letter
was dated December 2, 1889, and was addressed to her
attorney. In it she said: "I am very anxious to hear
definitely about the trial; I am unable to take so long a
journey alone at present. I have worried myself ill,
until nervous prostration got the better of me. I am
also suffering from rheumatism. I must give notice
this week to the company, if I intend to remain with
them and open January 13th in San Francisco. I can't
put them off in this matter. I can't hear from you, and
every night they send for decided answer, and I am un-
able to decide. If I come to San Francisco, I give up
my engagement in the middle of winter. You say noth-
ing about the divorce being granted to me if I accept
settlement. I have done nothing to grant a divorce, but
if there is no other alternative I must." This motion
was also denied, and in so doing, as well as in its denial
of the previous motion, I think the court erred. The
defendant was a non-resident of the state, an actress by
profession, and under engagement as such, and while it
appears from the letters and telegrams to her counsel
that she did not wish to break this engagement if she
could avoid it, and that this was one reason why she may
have desired a postponement of the trial, still, there is

nothing in these letters and telegrams to warrant the inference that she and her counsel were acting in bad faith with the court in asking for a continuance upon the ground of the state of her health, as represented in the affidavits of herself and physician, or that such affidavits were untrue.

In actions for divorce, public policy imperatively requires that nothing should be done in haste. The public are interested in having no divorce granted except for adequate cause, and the surest way to determine whether there is good cause or not is to hear both sides. In accordance with this rule, it has always heretofore been held by this court that when an application is made to set aside a judgment of default, and for leave to answer in such an action, a more liberal rule is to be applied than in other cases, in which only private rights of property are involved. Thus in the case of *Wadsworth* v. *Wadsworth*, 81 Cal. 182, 15 Am. St. Rep. 38, this court reversed the action of the lower court in refusing to set aside a default, although it was admitted that the appellant had been guilty of such negligence as would in an ordinary action have deprived her of the right to such relief. The court there said: " So far as the divorce awarded to the defendant is concerned, the motion should have been granted under the rule laid down in *McBlain* v. *McBlain*, 77 Cal. 509. In that case the court, per Paterson, J., said: 'The parties to the action are not the only people interested in the result thereof; the public has an interest in the result of every suit for divorce; the policy and the letter of the law concur in guarding against collusion and fraud; and it should be the aim of the court to afford the fullest possible hearing in such matters.' In the present case there seems to have been an honest desire on the part of the plaintiff to present her side of the case; and while in an ordinary action the neglect shown might be sufficient to deprive her of a right to relief, yet in this kind of case a more liberal rule should prevail."

It is plain to my mind that if the court below had kept in view the rule as thus declared, it would not have

denied to the absent defendant a continuance for one week, which would have afforded her an opportunity to be present and give evidence in her own defense, more especially when such motion was based upon the solemn affidavit of her counsel, in which he assured the court, upon his information and belief, "that it was the intention of the defendant to be present in San Francisco, at said trial, on December 2, 1889, and that she was and is prevented therefrom by her said illness, and not otherwise."

It is very apparent from all of the telegrams, letters, and affidavits submitted to the court, that the defendant desired to be present at the trial, and neither of the motions for a continuance called for any unreasonable delay, and there is nothing in this record to show that plaintiff could possibly have been injured if either of them had been granted. Under such circumstances, the refusal of the court to postpone the trial was error, and not within the limits of that judicial discretion which the law intends shall govern and restrain courts in their rulings upon such questions, and which discretion is never capricious, arbitrary, or unjust, but is always "exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat, the ends of substantial justice." (*Bailey* v. *Taaffe*, 29 Cal. 424.)

Whatever cause may have existed for a divorce in this case, or however unwise or unfortunate the marriage between the parties may have been in the first instance, I can find in such facts no justification for bringing on the trial against a non-resident woman, in fifty-three days after issue joined, in the face of a demand for the limited and reasonable postponement asked for by her counsel, and which motions for such purpose, it must be presumed from this record, were made in good faith. The marriage was a lawful one, and gave to the defendant rights of which she should not be deprived without full and complete opportunity for defense.

The judgment and order should be reversed.

HARRISON, J., and BEATTY, C. J., concurred in the dissenting opinion of Mr. Justice De Haven.

Rehearing denied.