## CORRINE BARTLETT *v.* WARD S. BARTLETT.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED NOVEMBER 12, 1901.   DECIDED DECEMBER 18, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Extreme cruelty for purposes of divorce does not require personal violence. It may exist if there is bodily injury, whether actual or apprehended, whether direct or indirect through mental suffering. *Quere,* whether mental suffering alone is sufficient.

False and malicious charges of adultery may amount to extreme cruelty, but they do not necessarily under all circumstances. In determining whether they amount to extreme cruelty or not, it is proper to consider whether they were made in the presence of third persons or not and whether they resulted in bodily harm or an apprehension of bodily harm or not.

A charge of "unfaithfulness" may or may not amount to a charge of adultery according to the circumstances.

The opinion of a trial court in a divorce case should be considered as a whole. Parts may be explained by other parts. Inaccuracies in parts would not necessitate a new trial when there is no reason to suppose that a new trial might result differently.

Under our statutes a decree of divorce has the effect of a verdict of a jury and cannot be reversed as contrary to the evidence, if there is sufficient evidence to support it.

OPINION OF THE COURT BY FREAR, C.J.

This is an action for divorce on the grounds of extreme cruelty and habitual intemperance. At the trial the libellant and two other witnesses were introduced in support of the petition. Upon the close of her case, counsel for the libellee announced that there was no defense. The court thereupon dismissed the libel on the general ground that the proof was not sufficient, without going into details. Counsel for the libellant

then requested a continuance for the purpose of producing further evidence upon the ground of habitual intemperance. Time was given and two additional witnesses were produced on this ground. The court then again dismissed the libel for the same reason, that there was not sufficient proof, this time setting forth the reasons at some length in an oral opinion. The libelee now brings the case here on exceptions to certain findings and rulings in this opinion. The ground of habitual intemperance is abandoned in this court. As to the other ground it is contended that the trial court erred in holding substantially (1) that a charge of "unfaithfulness" by the husband against the wife under the circumstances was not a charge of adultery; (2) that mental suffering alone could not constitute extreme cruelty, and (3) that a charge of adultery could not constitute extreme cruelty unless made in the presence of third persons.

One particular course of conduct may be held to amount to extreme cruelty, and another not, and generalizations may be made to a certain extent as to what constitutes extreme cruelty, but from the very nature of the case no definition of extreme cruelty can be framed which can be satisfactorily or easily applied to all cases. The prevailing view seems to be that personal violence is not necessary, but that it is sufficient if the conduct is such as to impair the health or produce bodily injury or such as to create an apprehension of bodily injury. The usual test seems to be physical injury, but this may be actual or apprehended, and may be direct or indirect through mental suffering. Mental suffering is not generally deemed sufficient unless it is such as to impair the health, in other words, if mental suffering is sufficient, its test is generally that it impairs the health. In some states by statute extreme cruelty may consist of mental suffering alone, and perhaps in one or two states this has been held in the absence of statute. This may be a reasonable view but we need not in this case express an opinion as to what weight should be given it considering the preponderance of authority to the contrary.

In the present case, false and malicious charges of adultery

are relied on as constituting extreme cruelty. These are often said to constitute extreme cruelty—but whether because they are supposed to result in an impairment of health or to create an apprehension of personal violence or bodily injury or because they are supposed to produce mental suffering, does not always clearly appear. No doubt great weight should usually be given to charges of this character when false and malicious—just how much weight is given depends somewhat upon what test of extreme cruelty is adopted by the particular court. But while this is so and while expressions are occasionally found to the effect that such charges constitute extreme cruelty, yet the cases as a whole do not seem to warrant the inference that charges of this character in all cases constitute extreme cruelty *per se* or as a matter of law. Whether extreme cruelty exists in any particular case is chiefly a question of fact to be determined under all the circumstances. How cruel or how disastrous in their effect such charges are in any particular case may depend on many considerations—how recklessly, how repeatedly, how publicly, how maliciously they are made, the degree of refinement and delicacy of sensibility of the parties, and many other considerations. In most cases in which such charges have entered into consideration there have been other circumstances also considered in connection with such charges. In *Barnes v. Barnes*, 95 Cal. 171, even where the statute expressly provided that "grievous mental suffering" alone without reference to bodily injury constituted extreme cruelty, the court said: "The common judgment of mankind recognizes the fact that there may be unfounded charges and cruel imputations which are not more easily borne than physical bruises, and the necessary effect of which is to cause great mental distress to the person against whom they are made. Whether in any given case there has been inflicted this 'grievous mental suffering' is a pure question of fact, to be deduced from all the circumstances of each particular case, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party; and no arbitrary rule of law as to what particular probative facts shall exist in order to justify a finding of the

ultimate facts of its existence can be given. As said by Mr. Justice McFarland, in his dissenting opinion in *Waldron v. Waldron*, 85 Cal. 251: 'Every case where a divorce is sought on this ground must depend upon its own particular facts; and a correct decision must depend—as most cases depend—upon the sound sense and judgment of juries and courts.' "

Now, referring, in the light of the foregoing, to the points raised in this case, one is that the trial court erred in saying: "Another thing, the charge of 'unfaithfulness' as made by the defendant against his wife, was not made in the presence of any other person but to her alone." It is contended that such a charge might constitute extreme cruelty even though not made in the presence of others and in support of this view authorities are cited which hold that such charges are sufficient (though in all the cases other circumstances also were considered) when made in letters to the wife. As we read the trial court's opinion this proposition of law was not disputed. The fact that the charge, if made, was not made in the presence of third parties, was merely "another thing" that the court considered along with the rest of the case. That it was a proper thing to consider is shown by our reasoning above as well as by many cases in which such a fact is mentioned as of importance. See, e. g., *Barnes v. Barnes, supra*; *Oxley v. Oxley*, 191 Pa. St. 474; *Haight v. Haight*, 82 N. W. (Ia.) 443; *Crow v. Crow*, 29 Or. 392. Moreover, the Judge seems to have referred to this fact chiefly as bearing on the question whether the charge had been made, for he proceeded immediately in the same paragraph to state that there were boarders and lodgers in the house and yet that they were not brought to testify to the making of such a charge, although they testified to other abusive language by the libellee to his wife, and this paragraph immediately followed the statement of other reasons given to show that such a charge had not been satisfactorily proved. The court did not hold that such charges could not constitute extreme cruelty unless made in the presence of third persons.

Another point is that the trial court erred in saying:

"It is not shown that at any time the husband struck the wife or threatened to strike her, nor is it shown that there was any reasonable apprehension of bodily harm of any sort; or that the conduct of the defendant, reprehensible as it was, wounded the feelings of the plaintiff to such a degree as to affect her health or create a reasonable apprehension that it might be affected."

This statement is merely a portion of the court's summary of the evidence. It was followed immediately by the statement that, "It is true that a false and malicious charge of adultery made by either of the spouses is generally held to be cruelty, yet in this case there is absolutely no evidence that the husband ever charged the wife with adultery." In other words, the court, after stating what the evidence showed, stated, in the passage now objected to, what it did not show, and then proceeded to consider the contention as to charges of adultery: The ground then under consideration was extreme cruelty and the court very properly considered all the evidence on that question. It did not hold that a false and malicious charge of adultery could not constitute extreme cruelty unless it resulted in bodily harm or a reasonable apprehension of bodily harm, although that is what most courts hold.

The two passages above quoted from the opinion of the trial court could hardly be construed, even when taken alone, as rulings respectively that mental suffering alone could not constitute extreme cruelty or that a charge of adultery could not constitute extreme cruelty unless made in the presence of third persons. Much less can they be so construed when read in connection with the rest of the opinion.

The remaining and principal point is that the trial court erred in finding that there was not sufficient proof that charges of adultery were made. The only witness on this point was the libellant herself. She testified that she went to the races one afternoon with her husband's permission and that when she came home in the evening she was abused for it, that "he called me unfaithful and everything and said I was running around with other men and everything that was contemptible and

mean," and when asked if he charged her with "unfaithful-
ness," she replied: "He has, yes," and when asked if he did
that habitually, she replied: "Always, everybody that comes to
the house it does not matter who they come to see, he accuses
me of it." She said that the upshot of it was that she left but
returned the next day, but that he did not do much better, and,
when asked if he continued to abuse her in the way she had
described, she replied that he "continued his nagging disposi-
tion." She also testified that on another occasion a neighbor
came to the house in the afternoon on an errand and sat down
and talked with her a minute and then went home, and that
"my husband had a Japanese watching me all the time and if a
lady came to see me or anybody he told him everything in the
house and when he came home in the evening he started in to
abuse me and called me everything that he could think of that
was contemptible and I could not stand it and went away," that
she returned home later in the evening and that about one
o'clock her husband came in "and closed the door and began
to abuse me and called me everything that you could think of
that was contemptible until I could not stand it and I got out
and went away." When asked if this language also was charg
ing her with "unfaithfulness," she replied: "Yes sir, always
was." Another witness, who had lived at the house, testified
that the libellee when under the influence of liquor was abusive
and quarrelsome, that by abusive he meant profane, that he
could not repeat the language but that it was "not any more than
any oath you would hear in a bar-room or place of that kind,"
that this language was addressed to the wife, that there may
have been some provocation at times, sometimes none, that the
provocation was "as to the way things were conducted at home
* * * management of the household affairs * * * the
direction of the cooking and the time of the meals * * *
failure to direct the cook * * * being away from home at
meal times," that those occasions were mostly at dinner time,
that being the time when the witness was usually there, that
there would be a general quarrel, that the wife "would return

\* \* \* some of the abusive language that he would use to her." The court, after referring to the evidence said, among other things: "He said 'You have been *unfaithful.*' That is the testimony of Mrs. Bartlett and it is to be presumed that she stated her case in the strongest light possible, consistent with truth. \* \* \* Now when a wife, without the permission of her husband, leaves home and stays away all night and does not return until the breakfast hour the next morning, the charge of *'unfaithfulness'* does not necessarily imply a charge of adultery. The charge in such case might well mean a disregard of household duties and wifely obligations other than chastity, althougl that would perhaps be the construction which some persons might place upon it. The authorities which Mr. Ballou has cited are clear in announcing the proposition that while the charge of adultery may be in any words denoting adultery, yet that it must be *in words which convey necessarily the idea of unchastity.*"

Under our statutes a decision in a divorce case is like the verdict of a jury in that it cannot be set aside or reversed if there is sufficient evidence to support it. *Laing v. Laing,* 10 Haw. 183. In the present case, considering that the libellant herself was the only witness who testified as to the matter in question, that she did not state what language her husband used, but merely described it in general terms, that she did not lay much stress upon this point, that others though living in the same house heard nothing of the kind so far as appears, that there were quarrels and abusive or profane language over other matters such as neglect of household duties and receiving callers, whether men or women, in some instances under such circumstances and at such times as to raise doubts as to whether the "unfaithfulness" alleged to have been charged was of the kind contended, that the charge of "unfaithfulness," if made, may have been made, as the trial court said, with reference to "disregard of household duties and wifely obligations other than chastity."—considering these and other things, we could not, if this were a jury verdict, set it aside, and therefore cannot set

aside the finding in this case so far as the evidence is concerned.

The crucial question is whether the trial court proceeded on an erroneous principle of law. We do not construe the opinion as holding that language could not be regarded as amounting to a charge of adultery unless it necessarily implied that when taken by itself alone. The court recognized that such a charge might be "in any words denoting adultery." The statement of the court that the authorities cited are clear that in cases of this kind the charge of adultery "must be in words which convey necessarily the idea of unchastity," taken by itself, seems to go too far. If that were an instruction given to a jury, it might be at least a serious question whether it would not be sufficient to call for a new trial. But the court alone acted in this case and the whole opinion should be considered together. If, instead of this statement, the court had said that "any words might be taken to amount to a charge of adultery if they could bear that meaning under the circumstances," there would be no reason for supposing that a different conclusion would have been reached. The trial Judge, besides making the statements above referred to in this connection, also quoted dictionary definitions of the word "unfaithfulness," and said that "there are many things the doing of which, or the omission to do which, would render the wife 'unfaithful.'" He also, in the passage above quoted, referred to the weakness of the testimony or the absence of testimony which was available and would naturally be expected to be given but which was not given, which would have shown in just what sense the word was intended. He also after referring, as above stated, to the authorities in a general way, proceeded to refer to the cases specifically and point out wherein they differed from this, showing that in those the charges were made clearly, whether directly or by implication, and in such a way as taken in connection with other circumstances made out extreme cruelty more clearly than was made out in the present case. Taking the opinion as a whole, the court seems to have dismissed the bill on the general ground that, all things considered, the evidence did not show a case of extreme cruelty

and more particularly that it did not satisfactorily appear that by the charge of "unfaithfulness" was intended a false and malicious charge of adultery. The decision was evidently based on the want of sufficient evidence, not on a view of the law which counsel contends is erroneous. It would be useless to order a new trial on the proposition of law that the word "unfaithful" might be held to imply adultery, unless we should also hold that it should be so held under the circumstances of this case, but we could not do that, if, as we must, we regard the decision as having the same weight as the verdict of a jury. It may be that the word "unfaithful" is generally used, under circumstances like the present, in the sense contended for, but we could not hold as matter of law on the evidence that it was so used in the present case. The word is capable of more than one meaning, and the sense in which it was in fact used in this instance was for the trial court to determine from the evidence. There is evidence of other misconduct on the part of the libellee which tends to support the ground of extreme cruelty, but it is not relied on in this court as sufficient to warrant us in reversing the judgment below, regarding that as having the weight of a jury verdict.

The exceptions are overruled.

*Kinney, Ballou & McClanahan* for libellant.

*J. A. Magoon* and *F. E. Thompson* for libellee.