## MILDRED BRUNS *v.* HENRY C. BRUNS.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED SEPTEMBER 16, 1912.    DECIDED SEPTEMBER 25, 1912.

### ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

DIVORCE—*extreme cruelty.*

> Extreme cruelty, as a ground of divorce, implies physical injury either actual or apprehended.  Personal violence need not be shown, but a state of unhappiness involving mental suffering which is not such as to impair the health does not amount to extreme cruelty.

### OPINION OF THE COURT BY ROBERTSON, C.J.

Mildred Bruns filed her libel praying for an absolute divorce from her husband, Henry C. Bruns, alleging extreme cruelty on the part of the libellee.

The circuit judge, at the conclusion of the testimony adduced by the libelant, dismissed the libel on the ground that the testimony did not prove the alleged extreme cruelty.   This appeal is from the decree of dismissal.   Physical violence, actual or

threatened, was neither alleged nor sought to be proved, but the case alleged and sought to be made by the libelant was a course of conduct on the part of the libellee which, it was alleged and claimed, had rendered the libelant hysterical and unhappy and as a result thereof she had become run down and weak, and that her life had become unbearable.

The evidence adduced in support of the libel consisted of the testimony of the libelant and her mother. Much of the testimony was remote, trifling and irrelevant and we deem it unnecessary to review it at length. It appears that the parties were married at Honolulu on the 7th day of June, 1910; that on the 8th day of April, 1911, Mrs. Bruns gave birth to a son; and that the libellee left his wife in December 1911. The libelant, who appears to be possessed of a passive, undemonstrative disposition, was described by her mother as a girl who could not cook, or sew, or do housework; and one who had been brought up extravagantly, was accustomed to have everything, could not deny herself, could not get along like other girls, and would feel hurt and wounded if she did not get things she wanted. The libellee was a United States deputy marshal whose only income was a salary of one hundred and sixty-six dollars a month. According to the testimony of his wife and mother-in-law he was of a cold and unaffectionate disposition, moody, and, at times, sulky and ill-natured. The young couple did not get along happily. The libelant evidently became dispirited, and she cried. at times. She testified that she could not eat and was unable to sleep. But the testimony was very indefinite as to the extent to which she was affected in these respects. There was no clear showing that her health became impaired by reason of her husband's conduct. Much of her discomfort doubtless resulted from her pregnancy and the ensuing child-birth. Toward the close of the direct examination of the libelant we note the following questions and answers: "Q. Now, I want to ask you generally, Mrs. Bruns, as a result of all the different things you have testified to here in respect to your husband's treatment of

you, what was the effect upon you during the entire married life as to whether or not your marriage was a happy or unhappy one.    A.    Unhappy one.    Q.    And how did it affect you physically, Mrs. Bruns?    A.    Why, I never weighed over 112 pounds.    Q.    You never weighed over 112 pounds?    And is that less weight or more weight than previously?    A.    Less. Q.    And how has it affected you mentally, Mrs. Bruns?    What has been your state of mind during all this time?    A.    Very upset.    Q.    Very upset?    And how did it affect you mentally in respect to your ability to do the ordinary things you were accustomed to do prior to your marriage?    A.    I couldn't do them.    Q.    Why couldn't you do them, Mrs. Bruns?    A.    I wasn't strong enough to do them.    Q.    You were not strong enough to do them?    And was that condition the same or different after you got over the effects of the birth of your child? A.    The same.    Q.    It was the same?    And how was the effect prior to the time that you became pregnant?    What was your ability, your mental ability to attend to doing things you were in the habit of doing?    A.    It was all right."    And upon cross-examination the libelant gave the following testimony: "Q.    Who is your physician, Mrs. Bruns?    A.    I have never had a doctor only when I was with the baby, Dr. Hodgins.    Q. Never needed one?    A.    No, sir.    Q.    Pretty healthy?    I say you are in pretty good health, are you?    A.    Well, up to the time the baby was born.    Q.    And from the time the baby was born you are a little thin?    The baby has held you down? A.    Yes, sir.    Q.    And outside of that there is nothing organically wrong with you?    A.    No, sir; I have some pains in my back and side.    Q.    That is from the delivery, is it?    A.    I really don't know; I guess so.    Q.    And other than the pains in your back and your side you are in fair physical and mental condition?    A.    Yes, sir."

We are unwilling to say that the circuit judge committed error in dismissing the libel.    The statute (R. L. Sec. 2228) authorizes the granting of divorces for "extreme cruelty" with-

out defining in what such cruelty may consist. In *Coleman* v. *Coleman,* 5 Haw. 260, which was a suit for separation on the ground of "excessive and habitual ill-treatment" this court approvingly quoted Lord Stowell that "What merely wounds the mental feelings is in few cases to be admitted where not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty." In *Bartlett* v. *Bartlett,* 13 Haw. 707, 708, a more liberal view was taken, the subject of extreme cruelty being summed up thus: "One particular course of conduct may be held to amount to extreme cruelty, and another not, and generalizations may be made to a certain extent as to what constitutes extreme cruelty, but from the very nature of the case no definition of extreme cruelty can be framed which can be satisfactorily or easily applied to all cases. The prevailing view seems to be that personal violence is not necessary, but that it is sufficient if the conduct is such as to impair the health or produce bodily injury or such as to create an apprehension of bodily injury. The usual test seems to be physical injury, but this may be actual or apprehended, and may be direct or indirect through mental suffering. Mental suffering is not generally deemed sufficient unless it is such as to impair the health, in other words, if mental suffering is sufficient, its test is generally that it impairs the health. In some states by statute extreme cruelty may consist of mental suffering alone, and perhaps in one or two states this has been held in the absence of statute. This may be a reasonable view but we need not in this case express our opinion as to what weight should be given it considering the preponderance of authority to the contrary." In *Kauhimahu* v. *Kauhimahu,* 19 Haw. 378, a suit for divorce on the ground of the extreme cruelty of the wife, it was said that "The wife's conduct in this case certainly ought to make the husband's home life unbearable but it will not do to grant

Bruns v. Bruns, 21 Haw. 284.

divorces on the ground that the married pair are unendurable to each other.   Causing mental agony is not, under our statute extreme cruelty.  * * *  The plaintiff testified that his wife's conduct worried him so that he did not sleep well and kept him from study and work, but that it did not affect his health. Whether the evidence would sustain a finding of adultery or not we cannot hold that it shows a case of extreme cruelty."

Within the principle of the two cases last referred to the libelant in the case at bar failed to make out a cause for divorce. The rights of the parties are governed by the statute, and, as pointed out, the statutory ground which the libelant has invoked has not been substantiated by the evidence.

The decree appealed from is affirmed.

*E. C. Peters* for libelant.

*W. B. Lymer (Thompson, Wilder, Watson & Lymer* on the brief) for libellee.

