[Civ. No. 6707. First Appellate District, Division One.—May 28, 1929.]

ADA J. SCHLECHT, Respondent, v. FRANK W. SCHLECHT, Appellant.

William Thomas Helms for Appellant.

E. R. Young, Harlow Hurley and Foster C. Bumpus for Respondent.

DOOLING, J., *pro tem.*—Appellant and respondent are husband and wife. In an action by respondent for separate maintenance appellant filed a cross-complaint for divorce on the ground of extreme cruelty. To appellant's first amended cross-complaint the court sustained a general demurrer with-

out leave to amend, and from a judgment of dismissal following such order appellant has prosecuted this appeal.

█ The alleged acts of cruelty were separately set out in eight paragraphs. Paragraphs numbered 1, 2, 3, 5 and 6 all have to do with the failure of the respondent wife to join with appellant in signing certain legal documents. They may be considered conveniently together. Typical of these incidents is that alleged in paragraph 1. It is alleged in this paragraph that in 1895, approximately three years after the date of their marriage, appellant was hard pressed for money and sought to borrow $800 from a relative. The relative insisted upon the respondent wife joining with appellant in signing this note. Respondent "refused to sign the said note and would give no reason for not signing said note, and refused to discuss the matter" with appellant. This refusal continued for about two weeks and caused discussion and comment derogatory to appellant among his relatives and friends, injured his credit and humiliated and embarrassed him and caused him grievous mental suffering for many years. It is likewise alleged that respondent was indifferent to and unaffected by appellant's mental suffering; and that this in turn caused appellant additional mental suffering. Paragraphs 2, 5 and 6 have to do with similar refusals to sign deeds to parcels of appellant's separate property in 1901, 1922 and 1923, respectively, and paragraph 3 concerns a refusal to join appellant in signing a contract to sell certain real property in 1917. The allegations are not dissimilar in each instance.

Concerning these particular paragraphs counsel for appellant says in his opening brief: "While it is true that a wife has a right to refuse to sign any contract, deed, note or other instrument, yet in the exercise of that right she has no right to inflict the cruelty complained of in the first amended cross-complaint."

█ This concession would seem to dispose of these particular allegations. The wife in these transactions stood upon her strict legal rights. In so doing she may have proved unsympathetic, she may have refused to discuss the matters, as she also had a legal right to do; she may have been grasping and acquisitive, and she may have been indifferent to and unaffected by her husband's mental suffering; but while a husband may be unfortunate not to secure from

his wife that whole-hearted sympathy and affection and co-operation which is the glory of the married state when it exist in full measure, the want of it, standing alone, has never been held in this state to constitute grounds for divorce, no matter how much suffering the husband may be subjected to thereby. So long as incompatibility of temperament is not recognized as a ground for divorce we cannot hold that mere passive indifference or lack of feeling upon the part of a wife in insisting upon her strict legal rights is sufficient to support a charge of extreme cruelty.

■ Paragraph 7 recites that appellant, in 1913, purchased in the name of respondent a home for himself and respondent, and that thereafter on several occasions he requested respondent to permit him to build a new and better home for himself and respondent, but respondent in every case refused, and finally, in 1921, sold the home in which they had been living and "practically compelled" appellant to go with her and live at the home of their daughter and son-in-law, all of which caused appellant great and grievous mental suffering. Husbands, even in this day, have a few legal rights superior to their wives, one of which is the right to choose the matrimonial domicile, and if appellant had furnished a home suitable to their state of life and respondent had refused to live in it for the statutory period of one year, appellant might then have brought suit for divorce on the ground of desertion. But the mere success of the wife, in the give and take of the marriage relation, in imposing her will upon the husband in the matter of the choice of a home cannot, in our judgment, constitute the extreme cruelty contemplated by the statute. If it should be held to do so we have no doubt that there are thousands of husbands who, without now realizing it, would find themselves with good cause of action against their wives for divorce.

■ Paragraph 4 is more serious in its nature. It charges that in 1921, at a time when appellant was sorely in need of money, respondent took and concealed Liberty bonds of the value of $1500, the separate property of appellant, and refused for a long time to admit that she had taken them, and that this was done to vex and annoy appellant and out of a mercenary desire to keep and own said bonds, and that this did annoy and worry appellant and cause him grievous

mental suffering. We may concede that respondent in this respect acted in violation of appellant's legal rights, and that if this conduct did in fact cause appellant grievous mental suffering, as alleged, it might justify a court in granting him a divorce. But by continuing to live with respondent from 1921 to 1927 this conduct was condoned, unless the acts alleged in the last paragraph now to be discussed were sufficient to revive the right of action.

The last paragraph sets up that in December, 1925, appellant returned to California from an extended visit in South Dakota, suffering from diabetes, and went to the home of respondent, which she had received from appellant in 1922 as her separate property by reason of a property settlement between appellant and respondent effected at that time; that appellant "met with a very cool reception" from respondent, "who made it very clear" that appellant was not welcome, so that appellant went to a hotel to stay; that a few days later appellant obtained permission from respondent to live in a house belonging to respondent at Tujunga, and remained there about three weeks, when respondent came and told appellant that their daughter was worrying because appellant was old and sick and needed care, "and for her daughter's sake" appellant should come and live at respondent's residence; that it was arranged that appellant pay respondent $50 per month for his living expenses, which he continued to do until respondent left for a trip to South Dakota, during which time he paid $20 per month to respondent and $30 per month to their daughter, with whom he was then living. That upon respondent's return from South Dakota, in October, 1926, appellant offered her $50, which she refused, saying: "I would take nothing before I would take that." That thereafter, on January 12, 1927, respondent caused to be served on appellant her verified complaint for separate maintenance, in which she alleged "that during the last four months plaintiff has demanded of defendant that he support and maintain the plaintiff; that the defendant has refused to pay any sum whatsoever, and now refuses to pay any sum towards the maintenance of the plaintiff, or plaintiff's and defendant's home, . . . still lives at the plaintiff's and defendant's home, and is fast consuming the plaintiff's private resources . . . and has stated that he will not support or maintain the

plaintiff.'' That these allegations were untrue and known to be so by respondent, in that appellant had offered to pay respondent $50 per month, which she had refused, and respondent then owed appellant $555, as she afterward admitted in court, and that furthermore, in 1922 appellant had amply provided for respondent's support by a certain property settlement agreement. It is further alleged that all of these facts caused appellant grievous mental suffering.

It is evident, of course, that the suit for separate maintenance was the outcome of a difference of opinion between the spouses as to the amount which should be contributed by the husband to their common support. Conceding that appellant had by way of property settlement conveyed to respondent property amply sufficient to support her, that did not entitle him, so long as he had sufficient means of his own, to be supported by his wife. When she insisted on more than $50 per month he refused to pay it. It is futile for us to attempt to say who was right in this dispute, but there was a dispute which the wife decided to settle by resort to law. She may have chosen the wrong remedy and she may, wilfully or otherwise, have included in her complaint allegations that exceeded the truth. If she did, the appellant would have his day in court and ample opportunity to defend. The mere bringing of the action in an attempt to settle their respective rights could not be construed as extreme cruelty and while the courts have held that charges of adultery or gross immorality falsely made in a complaint may constitute extreme cruelty, no case can be found where allegations of the sort herein made by respondent have been held sufficient to do so. The allegations of the complaint for separate maintenance above set out fall so far short of any allegations which have been held to constitute cruelty that we are satisfied the trial court properly held that they did not do so.

The ''coolness'' of the wife in 1925 and the subsequent bickerings are also clearly insufficient and were apparently condoned.

We have given this appeal a fuller consideration than its importance and the facts involved would seem to justify because of the apparent earnestness of counsel for appellant in presenting his case on appeal. We have examined all of the cases cited by appellant: *Avery* v. *Avery*, 148 Cal.

239 [82 Pac. 967]; *Carpenter* v. *Carpenter,* 30 Kan. 744 [46 Am. Rep. 108, 2 Pac. 122]; *Barnes* v. *Barnes,* 95 Cal. 171 [16 L. R. A. 660, 30 Pac. 298]; *Andrews* v. *Andrews,* 120 Cal. 184 [52 Pac. 298]; *Curl* v. *Curl,* 130 Cal. 638 [63 Pac. 65]; *MacDonald* v. *MacDonald,* 155 Cal. 665 [25 L. R. A. (N. S.) 45, 102 Pac. 927]; *Brandt* v. *Brandt,* 178 Cal. 548 [174 Pac. 55]; *McCahan* v. *McCahan,* 47 Cal. App. 176 [190 Pac. 460]; *Davis* v. *Davis,* 58 Cal. App. 100 [207 Pac. 923]. In none of them do we find a set of facts at all similar to those set out in the amended cross-complaint or anything which leads us to believe that the allegations of the amended cross-complaint are sufficient to constitute a cause of action.

Appellant seeks to bolster the allegations of the amended cross-complaint by certain facts appearing in the record, but not set out or referred to in his pleading. In view of the fact that a demurrer was sustained to the original cross-complaint without leave to amend and a judgment of dismissal entered thereon, and that this judgment was set aside on motion of appellant to permit the filing of his amended cross-complaint, the trial court was entitled to assume that the amended cross-complaint fully set out the facts. It was not an abuse of discretion to sustain the demurrer to the amended cross-complaint without leave to amend under such circumstances and appellant must stand upon the allegations which he has seen fit to make.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.