[Civ. No. 2844. Fourth Dist. May 20, 1943.]

GRETA B. WILSON, Appellant, v. CHARLES C. WILSON, Respondent.

Earl F. Crandell and Wm. G. Condron for Appellant.

Wolford & Heald and Darwin H. Wolford for Respondent.

GRIFFIN, J.—Plaintiff and appellant commenced this action against defendant and respondent alleging certain acts of claimed physical cruelty, sought a divorce, custody of the five minor children, and the community property. Defendant answered, filed a cross-complaint, alleged extreme cruelty,

and sought reciprocal relief. Six children were born of this marriage. The oldest, at the time of the beginning of this action, was 21 years of age, and married. The youngest was seven years of age.

The main difficulty between the parties grew out of plaintiff's association with an organization known as "Jehovah's Witnesses," and defendant's opposition to her membership in it and her conduct in connection therewith, particularly with reference to her distributing literature on the streets of various towns in Imperial Valley, and the influence her conduct and beliefs had upon defendant and the minor children.

The action proceeded to trial. At the conclusion thereof the court denied plaintiff relief on her complaint, awarded the defendant a decree upon his cross-complaint and gave the custody of all of the unmarried children to him and awarded the small amount of community property to the defendant for the benefit of the said minor children. The other provisions of the decree are unimportant to this appeal. It is from the exercise of the trial court's discretion in finding for the defendant and cross-complainant as to the above matters that plaintiff has appealed.

It is not feasible to set out in this opinion all of the evidence in the case. A great portion of it consists of many exhibits in reference to the literature of the organization of which plaintiff was a member. We will, however, attempt to set out sufficient evidence to indicate what the trial court had before it to consider in support of its findings.

Plaintiff argues that the evidence of her activities in connection with the Jehovah's Witnesses was not such that she should be found to be an unfit or improper person to have custody of the children, nor was it such conduct as would constitute a ground for divorce based upon cruelty. Defendant takes a contrary view. Her argument was rejected and defendant's view was shared by the trial court.

Defendant and his wife were married in 1918. He was an automobile mechanic. Their marital status seemed to go fairly smooth until about six years ago when plaintiff became connected with the organization known as Jehovah's Witnesses and became quite active therein. Defendant was opposed to their principles, as he understood them, and remonstrated with his wife in reference thereto. He claims that he came to California to "try to get away from it" but that he was unsuccessful in this respect. He testified that her

activities had caused him "worry and anguish"; that his wife would remain away from home and their children until late at night and for days, and that he discovered that she had been gone as long as three days without telling him or making provision for the care of the children; that he, with the aid of the oldest girl, would be compelled to prepare their own meals and see that the children were clean enough to go to school. He testified further that his wife on some of these occasions would go on the streets of Brawley, where he was well known, and for hours endeavor to sell their literature, remaining away from home and the children; that on one occasion he said he did slap her because he had asked her to stay off from the streets selling the literature in the town where he knew so many people; that it interfered with his employment; that two days later he caught her "peddling the magazine" and he took them away from her and slapped her; that on another occasion two weeks later he caught her with a sack full of books and magazines; that he took them away from her; that she called him a "liar" and he told her what he thought of her books and then he slapped her; that it is impossible for them to live together as long as she follows that creed because she taught the teachings and doctrines of the organization to the children; that he believed that the doctrines so taught were detrimental to the government and to the minds of the children; that plaintiff endeavored to teach them that the organization, as such, does not believe in saluting the flag of the United States, and that the children were fully justified in disobeying and disregarding the laws of our land when they thought such laws conflicted with some construction which the organization might place upon certain passages of the Bible. Defendant further testified that on one occasion when he found plaintiff endeavoring to teach such doctrines to the children in their home late one evening that he said to her: "Get out and let them go to sleep," and that "she started kicking and she kicked the hide off of my knee and I still have the scar (exhibiting same). I caught her by the foot as she tried to kick me in the face and dragged her into the other room. She went back and I reached out to take her by the shoulder and she started kicking again, and I caught her by the foot and dragged her back through again, and she threw her shoes at me. I pushed her into the bedroom. She was trying to kick at me . . . I didn't hit her on that occasion. . . . She started to the police station to

have me arrested. I got the two little girls in the car and I thought if she got to the police station they would have trouble in getting me because I wasn't going to the police station unless she went too. I caught up with her before she got there and put her in the car, and I tried to get her to go back home with me and she would bounce out faster than I could put her in . . . the police came along . . . and they stopped and talked. She was determined to have me arrested. . . . She went home and the next morning she got up and went out and swore out a warrant for me and had me hauled into the police court. . . ."

Many exhibits were placed in evidence in an endeavor to show the doctrines being taught by the organization and which she, in turn, it is claimed, imparted to the children. The effect of these teachings, as construed by the trial court, is set forth in the findings in detail. The court then found that the plaintiff, "for approximately ten years last past has been a member of a certain sect or cult known as Jehovah's Witnesses; that as such member the said plaintiff . . . is engaged in the spreading and dissemination of the doctrines of said sect through public solicitation, public speaking, and the continued distribution of printed matter . . . the author of some of which is one 'Judge Rutherford,' . . . that plaintiff . . . implicitly believes in and advocates all of the matters and things set forth in said exhibits and said printed matter; that some of such printed matter expressly and by implication instructs the members and followers of said sect to disobey and violate the laws of the United States, the State of California, and other local laws whenever and wherever it may appear to the individual member of said sect that any such law does not meet with his or her approval according to his or her interpretation of some passage or passages of the Holy Scriptures . . ."; that "the members of said sect and the said plaintiff . . . refused to salute or recognize the flag of the United States as a symbol of democracy"; that plaintiff, "up to the time of the separation of the parties hereto, kept quantities of such printed matter in the home of said parties for the members of the family and the minor children of said parties to read and study, and said plaintiff . . . taught and instructed the said children . . . in the doctrines of said sect as set forth in said printed matter"; that "for several years last past the said plaintiff . . . in her endeavor to spread such doctrines as aforesaid, has contin-

ually absented herself from the home of the parties and has traveled to other places, and at certain of said times has taken the younger children of said parties with her, and caused them to distribute copies of said printed matter upon the streets and in public places and, during the month of August, 1941, said plaintiff so absenting herself from the home of said parties attended a convention of said sect in the East and paid her own expenses in so attending said convention out of the community funds of the said parties. The said plaintiff . . . intends to continue the practice of preaching and spreading the doctrines of said sect and to continue absenting herself from the home of said parties, as she has in the past, in so doing . . . that said defendant . . . during all of the times herein mentioned has been, and now is opposed to the doctrines and teachings of Jehovah's Witnesses and said defendant is opposed to having the children . . . taught the doctrines and teachings of said sect, disrespect for religion, or disobedience of the laws of the United States, the State of California, or local laws, or disrespect for or refusal to salute the flag of the United States; that said defendant . . . on many occasions has so informed the said plaintiff . . . and many times has requested and demanded that she desist from teaching said doctrines to the children of said parties; that she remain at home and refrain from preaching and spreading the doctrines of said sect upon the streets and in other public places; that the said plaintiff . . . has persistently refused to comply with the wishes and requests of said defendant . . . and has continued . . . in all of said activities, against the will and continued protests of the defendant . . . and on . . . the 30th day of June, 1941, finally left and abandoned the home of the said parties in Brawley . . . so that she might continue in said practices unhampered and without restraint so far as said defendant . . . was concerned.'' The court then further found ''that said defendant on some two or three occasions slapped and spoke harshly, and even cursed the said plaintiff . . . in remonstrating with plaintiff . . . about her conduct in absenting herself from the home and in teaching and preaching the doctrines of said sect which said defendant . . . believed to be unpatriotic . . . and detrimental to the welfare of the minor children . . .; that such conduct by and on the part of said defendant . . . has been and was encouraged and provoked by the actions and continued course of conduct of said plaintiff. . . .''

It is apparent from the testimony that the trial court was justified in believing that the conduct of the plaintiff was such as to cause and that it did actually cause great and grievous mental suffering on the part of the defendant. The defendant has had the care and custody of the children for more than a period of one year and apparently the plaintiff has chosen the work of furthering the interests of Jehovah's Witnesses in preference to her family. The trial court had before it the parties involved and was able to judge of their appearance. It was in a much better position to judge of the welfare of the children than is the appellate court. ▮ It is settled law in this state that the finding of the trial court on this question will not be disturbed on appeal unless the evidence in support thereof is so slight as to indicate a want of the ordinary good judgment and an abuse of discretion by the trial court. (*MacDonald* v. *MacDonald,* 155 Cal. 665, 670 [102 P. 927, 25 L.R.A. N.S. 45].) Whether in any given case there has been inflicted "grievous mental suffering" is a question of fact to be deduced from all the circumstances of each particular case. A correct decision must depend upon the sound discretion and judgment of juries and courts. (*Barnes* v. *Barnes,* 95 Cal. 171 [30 P. 298, 16 L.R.A. 660]; *Taber* v. *Taber,* 209 Cal. 755 [290 P. 36].) The evidence supports the findings and the findings support the judgment.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.