## Purcell v. Purcell.

(Decided February 9, 1923.)

## Appeal from Bullitt Circuit Court.

1.  Divorce—Cruel and Inhuman Treatment—Evidence.—Evidence in a divorce action on the ground of cruel and inhuman treatment showing that at times for a short period there were lacking certain essential provisions at the home, but that this condition was neither customary nor lasted any length of time; that while the wife was not liberally provided with clothes, she had enough to go around among her friends and appear at entertainments, and that the husband was not as generous with or considerate of his wife as a man of different temperament might have been, is not sufficient ground for absolute divorce, it appearing that the husband was a poor man with a comparatively small income and a growing family.
2.  Divorce—Cruel and Inhuman Treatment.—It is only persistent, studied and habitual misconduct which, if persisted in, will eventually be treated as cruel and inhuman treatment, where there is no physical violence or attempted violence.
3.  Divorce—Evidence.—Where there are shown certain delinquencies and shortcomings on the part of the husband in failing always to make proper provision for his wife and family, and in failing always to give courteous and considerate treatment to the wife, she not being wholly in fault in bringing about a separation, the husband was not entitled to an absolute divorce, even where she left his home.
4.  Divorce—Maintenance.—Where there has been such conduct on the part of the husband as to justify the wife in leaving his home, separate maintenance will be adjudged to her although the facts

are deemed insufficient to warrant the granting of an absolute divorce.

5.  Divorce—Custody and Support of Children.—Evidence examined and held that the chancellor properly adjudged a divided custody of the four children under the facts and circumstances.

6.  Divorce—Custody and Support of Children.—An allegation that a wife is not situated so, and her surroundings are not such that she could give the proper care, clothing and education to her children, if their custody was given to her, does not charge or import any moral delinquency on her part, but only goes to the question whether her material situation is such that she could properly care for, clothe and educate the children.

7.  Divorce—Attorney's Fees.—The chancellor in allowing an attorney's fee to plaintiff's counsel against defendant properly took into the estimate the fact that defendant had no property and a small income, and that he had to support his four children and pay an allowance to his wife. Although it was an inadequate consideration for the attorney, it was all that should have been allowed against the defendant, where it is expressly provided in the judgment that the attorney may charge an additional fee against his own client.

C. P. BRADBURY for appellant.

J. F. COMBS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming on original and cross appeals.

Appellant and appellee were married in May, 1907. He, at the time, was about thirty-five years of age and she some years younger.

He was then and has since been the station agent of the L. & N. Railroad at Belmont, a small station on that road, in Bullitt county, and his salary at the time was a meagre one. His aged mother owned and lived upon a farm right at or adjoining the village, and he, in connection with his duties as station agent, operated and cultivated that farm, but upon what terms or under what sort of contract or agreement is not made to appear.

For the first two years of their married life they lived in rented premises in the village; but because of some differences between appellee and some of the neighbors they were required to give up the rented premises. There being no other available place in the village they then went to live in a cabin on the farm of appellant's mother. This cabin was neither desirably located nor was it entirely fitted for comfortable habitation, and

this fact was recognized by each of them at the time; they agreed, however, to live there temporarily until appellant could erect a suitable residence on the farm of his mother, which he proceeded to do. They lived in the cabin something more than a year when, the new home being completed, they removed to it, and it was a comfortable and suitable home considering their station in life.

There were four children born to this union, three daughters and one son, the second child being the son. At the time the evidence was taken their ages ranged from six to twelve years.

In March, 1916, appellee, without the knowledge or consent of her husband, took the youngest child and went to the state of Oklahoma, as she says, on a visit to her foster mother, who resided there. She remained away about six weeks and upon her return did not immediately go to the home of her husband, but to the home of a relative a few miles away. She did, however, shortly thereafter, return to her husband's home and spent a part of the time there for the following two weeks. But about the middle of May she again took the youngest child and left the home of her husband and has never returned. After the separation, and on the 20th of July, 1916, the parties entered into a written contract "In order to avoid a suit over the question of alimony and the custody of their children." That contract provides that the father should have the custody of the three oldest children, but that they should be taken to the residence of their mother in Belmont as often as twice a week and remain there during the day or a considerable portion thereof; and the mother was to have the custody of the youngest child, but the father was to have the right to see her as often as twice in each week, either at his place of business in Belmont or at his mother's residence, and the child was to remain at such place during the day or a considerable part thereof. It was further provided that the contract was based upon existing conditions, and was not to prejudice the right of either party to apply to a court of chancery to determine the questions therein agreed on, upon a violation thereof, or when the conditions changed.

That status continued until July, 1919, when appellee instituted this action, asking for a divorce upon the ground of cruel and inhuman treatment, for alimony,

and for the custody of each of the children. The defendant answered, controverting the grounds of divorce and by way of counterclaim and cross-petition set up abandonment as his own ground therefor. He also relied upon the written contract with reference to the custody of the children and in addition asserted his right to the custody of all the children, alleging as ground therefor

"That plaintiff is not situated so that she can take proper care of the child that she now has in her custody; that her surroundings are not such that this child or any of the children that might be given into her custody could be properly cared for, clothed and educated."

Between the time of the separation and the bringing of the suit appellee's foster mother had removed from Oklahoma to Belmont, and appellee and her youngest child live with her in or near the village.

Neither of the parties has any property except the wife has a remainder interest in a tract of land subject to the life estate of her foster mother and from which she now has no income.

A great mass of evidence was taken on each side, much of it incompetent and much of it immaterial and about inconsequential things.

The chancellor refused an absolute divorce to each of the parties, but adjudged that they be divorced from bed and board. It was also adjudged that the father have the custody and control of the two older children all the time, and that they each have the custody and control of the third child for one-half of the time, and that the mother have the control and custody of the youngest child all of the time. But this was modified by directing that all four of the children should spend the first week in each alternate month with the plaintiff and the first week of the following month with the defendant; but this was further modified by a supplemental judgment directing that the third child remain with her mother during the weeks the other three children spent with their father. It was adjudged that the father clothe the three oldest children and the mother the youngest child, and the father was directed to pay to the mother the sum of thirty-three dollars and thirty-five cents each month, and was further adjudged to pay the cost of the action and a fee of one hundred and twenty-five dollars to the plaintiff's attorney. It is recited, however, that the fee allowance to the attorney is fixed as a reasonable amount

to be paid by the defendant but is not meant to be the reasonable value of his services in this action and is not to prevent him from charging an additional fee to the plaintiff.

To this judgment each of the parties except; the defendant prosecutes this appeal and the plaintiff has been granted a cross-appeal.

The plaintiff's evidence on the issue of cruel and inhuman treatment falls short of presenting a case justifying a divorce. Without going into it in detail it simply shows, according to her own evidence, that at times appellant did not make what she deemed sufficient provision for her and her children; that he did not furnish her with the clothes to which she thought she was entitled; that at times there was no wood at the house with which to cook or by which to make a fire to keep warm. There is a mass of detailed evidence about these things which, when digested and analyzed, shows that possibly at times for a short period there were lacking certain essential provisions at the house, but this condition was neither customary nor lasted any length of time. It also shows that while the wife was not elaborately provided with clothes she generally had enough to go around among her friends and to appear respectable at entertainments which she attended, although her husband during all of his married life was a poor man with a comparatively small income and had a growing family on his hands. As to the scarcity of firewood, the evidence rather convincingly shows that at no period for any great length of time was there a scarcity of this fuel.

There is no pretense that the husband ever used or attempted to use physical violence, or that he ever laid his hand in anger upon his wife. She does claim that he strayed away from her at night for about six weeks at one time, but we find from inspection of the evidence that this was at a time when one of his children was desperately ill at the home of his mother and he stayed there during that period with the child.

Summing up the whole evidence on this issue we find only that the husband, being in very moderate circumstances and having a very small income with a growing family, possibly at times, was not as generous with or considerate of his wife as a man of different nature and temperament might have been. But this falls short of

cruel and inhuman treatment within the meaning of our statute.

Men and women marry presumably with the knowledge by each that the other is not perfect; that sacred relationship is entered into with a realization by each that the other is subject to the ordinary faults and weaknesses of mankind, and with the expectation that certain shortcomings and delinquencies will be shown by each of them. To hold, therefore, that it was ground of divorce because a man did not have in the wood shed at all times during a married life of nine or ten years a sufficient supply of wood, or that he did not have at all times during that period sufficient flour, meal, sugar, coffee or lard in the house would be to grant a divorce for trivial oversights and shortcomings.

It is only persistent, studied and habitual misconduct which, if persisted in, will eventually be treated as cruel and inhuman treatment, there being no physical violence or attempted violence. Riggins v. Riggins, 191 Ky. 22.

But the husband says he should have been granted an absolute divorce because his wife abandoned him without cause. But the evidence does show certain delinquencies and shortcomings on his part in failing always to make proper provision for his wife and family and in failing to give that courteous and considerate treatment at times to which she might have been entitled. On the whole, while it is clear she had no ground of divorce for cruel and inhuman treatment, it cannot be said that she was wholly in fault in causing the separation. The fact is the evidence discloses certain shortcomings and inconsiderate treatment on each side, and the chancellor below, in our opinion, while holding that the wife was not wholly justified in leaving her husband's home, likewise held that he himself was not wholly without fault. Where there has been such conduct on the part of the husband as to justify the wife in leaving his home, separate maintenance will be adjudged to her although the facts are deemed insufficient to warrant the granting of a divorce. Gans v. Gans, 157 Ky. 775.

But each of the parties say they are entitled to the custody of each of the four children, and this phase of the case presents some troublesome features.

It appears that the three older children had for some time before the separation and some time prior to the entering into the contract of separation, spent a great

deal of their time at the home of appellant's mother, where she lived with two unmarried daughters, the sisters of appellant. Those three children, twelve, ten and eight years old, respectively, testify in this record and they each express a preference to have their custody adjudged to their father, and they each express an affectionate devotion for him, and likewise claim that they do not love their mother because of alleged mistreatment by her.

The custody and welfare of infant children are the chief concern always of a chancellor in disposing of these tangled domestic difficulties. In this case, plainly, the father is better prepared in a material way to care for, clothe and educate these children than is the mother, and it is clear that his mother's home, where he lives, is a proper place for them and a place where they will be surrounded with loving care and be reared in a good atmosphere; on the contrary the mother's love and her natural right to the direct custody of her infant children must be taken into the estimate. The parties all live in the same little village; it may be assumed that wherever the custody may be temporarily, under the judgment of the chancellor, the other parent will occasionally see each child. The judgment provides for a scheme of divided custody, but requiring the husband to support these children. If, in fact, the mother has lost the affection of her three older children it provides a means by which she may regain that love by having the exclusive custody of them at certain times.

Considering every aspect of this unfortunate domestic tragedy and considering alone the welfare of these infants, it is difficult to see how, under all the conditions, a more satisfactory adjustment of these things could have been ordered or adjudged; and especially is this true in the light of the fact that the court expressly reserved the right in its judgment to at any time change the custody and control of the children, or any of them, and the amount of the maintenance, when it may be shown that such is for their best interests.

But the claim is made by appellant that he was entitled to the absolute custody of each of his children because the evidence shows his wife to be morally unfit to raise, rear and train them.

In the first place the allegations of the counterclaim and cross-petition, as shown by the quotation from ap-

pellant's pleadings, charge no moral delinquency whatsoever against the wife; it only charges that she is not situated so that she can take proper care of the children and that her surroundings are not such that they could be properly cared for, clothed and educated. This, as we interpret it, is no allegation whatsoever against the moral character of the wife, but only goes to the question whether her material situation is such that she could properly care for, clothe and educate the children if their custody was given to her.

But, waiving this question of pleading, it may be safely said, from the evidence, that while there are evidences of some indiscretions, possibly, upon the part of appellee, there is no tangible thing stated in the evidence, except one, showing any immoral conduct upon her part. That one thing is based upon the fanciful and unreasonable statement of a witness, which bears upon its face the stamp of improbability and which we think the chancellor in the court below properly ignored. At any rate he was in a better position than are we to know the weight to be given it, and evidently gave it none.

There is a stipulation in the record showing that about the time this judgment was entered appellant was receiving a salary of one hundred and five dollars a month from the L. & N. Railroad Company, and the allowance by the lower court that he should pay to his wife for her support and that of the youngest child thirty-three dollars and thirty-five cents a month was evidently intended to be a third of his income, which, under the circumstances, we deem fair and equitable.

The complaint of the insufficiency of the allowance to the attorney for the plaintiff, in one aspect of the case, is well taken. It is clear from the size of this record that the allowance of one hundred and twenty-five dollars for his services is wholly insufficient. But that is only, as recited in the judgment, the allowance against the defendant, and it is expressly stipulated is not to stand in the way of his charging a further fee against his own client. The chancellor in allowing only the one hundred and twenty-five dollars against defendant properly took into the estimate the fact that he had no property and a comparatively small income; that one-third of his income had been allowed to the wife and infant child, and that he was required to support the other three children, and it was evidently considered by the chancellor

that while the allowance to the attorney was inadequate, it was as much as, under the circumstances, should have been allowed against the defendant.

Considering that the interest and welfare of these children is still in the hands of the chancellor, we are aware of no more equitable adjustment that could be made of this tangled domestic situation.

This judgment is affirmed on both the original and cross appeals.

Judge McCandless not sitting.