## Hill, Jr. v. Hill.

(Decided May 13, 1924.)

### Appeal from Lincoln Circuit Court.

1. Witnesses—Neither Wife nor Husband can Testify in Action Against the Other, and Depositions Incompetent.—With exception of cases for divorce on ground of cruelty specified in Civil Code of Practice, section 606, subsec. 1, neither husband nor wife can testify in an action for divorce or alimony, and their depositions are incompetent.  ·

2. Divorce—Husband Requesting Wife to Leave Cannot Maintain Wife was in Fault in Leaving Home.—A husband requesting his wife to leave because they could not agree on religious matters cannot maintain that wife was in fault in leaving his home, in an action for divorce from bed and board.

3. Divorce—Divorce from Bed and Board May be Annulled at any Time.—A judgment for a divorce from bed and board is merely a decree for a legal separation and may be annulled at any time by court entering it by consent of parties.

4. Divorce—Alimony on Separation Held Excessive and Reduced.— Where husband's income was only about $950.00 per annum and he has consumed his estate in paying allowance to wife divorced from bed and board at rate of $80.00 per month, allowances should be cut down to $500.00 a year.  ·

T. J. HILL, JR., EMMET PURYEAR, D. COLLINS LEE, K. S. ALCORN and P. M. McROBERTS for appellant.

W. W. DICKERSON and DICKERSON & DICKERSON for appellee.  ·

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Thos. J. Hill and Elsa B. Hill were married on October 10, 1914, and lived together as husband and wife until August 1920, when they separated, and the wife on August 19, 1920, brought this suit against her husband for divorce from bed and board and a suitable allowance for herself and child.  The defendant filed answer denying the allegations of the petition; proof was taken and on final hearing the court entered a judgment granting the plaintiff a divorce from bed and board and directing that the defendant pay the plaintiff $80.00 a month for her support and for the support of the child, also the cost of the action, including an allowance of $200.00 to the plaintiff's attorney.  The defendant appeals.

The defendant and the plaintiff both gave their depositions, testifying at length as to the happenings in their home and the causes bringing about the separation. All of their testimony on these subjects was incompetent. Under section 606 of the Civil Code, subsection 1, it is provided as to husband and wife, "nor shall either of them testify against the other." The only exception in the statute material here is in these words:

"And except in an action for divorce where the grounds relied upon are those provided by section 2117 of Carroll's Kentucky Statutes, paragraphs 2 and 3, as follows: 'Habitually behaving towards her by the husband, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace or happiness. Such cruel beating or injury of the wife by the husband, as indicates an outrageous temper in him, or probable danger to her life, or great bodily injury from her remaining with him;' that either or both of them may in such suit testify."

The petition was not based on either of these grounds. The trouble between the parties was not of six months' duration. To bring the case within the statute the husband's conduct must not only be cruel but it must also be inhuman. There was no beating or injury of the wife by the husband, in fact no violence of any sort. With the exception of the cases given in the statute neither husband nor wife can testify in an action for divorce or alimony, and their depositions were in this case for that reason incompetent.

It is unnecessary to state the details leading up to the separation. Briefly stated the facts are these:

The defendant is a lawyer living at Stanford, Kentucky. The wife had taught music in Stanford a year before they were married and while she was there they became engaged. She was a Catholic and he a member of the Christian or Disciples' church. She insisted upon being married by a Catholic priest; he refused to be married by a Catholic priest and the engagement was broken off. A few weeks later she wrote him a letter and in response to this he went to Covington and they were married there before a Methodist minister. They returned to Stanford and apparently lived very happily together for about four years. Then their child was born. The

mother was confined at a Catholic institution in Cincinnati. When the baby was born it was baptized there and given the name Rosemary, and this greatly offended the husband. After she returned home, according to the proof for her, the defendant gave her no rest, insisting that she must join the Christian church. According to the proof for him she gave him no rest insisting on taking his family in the Catholic church. There seems to have been absolutely no trouble between them but the church question. He was teaching a bible class in his church and wanted a bible; she bought a Catholic bible, he says for him to use, she says for her own use, and he was very much offended. Her father came down to pour oil on the troubled waters and later her mother. They testify that the defendant said that he and his wife could not get along any longer together and the best thing for her to do was to leave; also that from time to time he asked her when she was going and insisted on her packing her trunk and getting away. Under the proof for him the wife spoke disrespectfully of Protestant ministers and Protestant churches and persistently followed the course of injecting the Catholic religion in their home.

It is earnestly insisted that the wife was not without fault; that the divorce from bed and board was improper and that no allowance should have been made for the support of the wife; but the proof is clear that the husband requested his wife to leave his home on more than one occasion, saying that it was the best thing for her to do, and there were extended conferences between him and her father and later between him and her attorney as to how much he would pay her for support. Under these circumstances the husband cannot maintain that the wife was in fault in leaving his home:

"The rule is that when the husband treats the wife in such manner as to justify her leaving him, an allowance for separate maintenance may be decreed upon a state of facts insufficient to warrant the granting of a divorce; nor is the chancellor restricted to statutory grounds for divorce, but he may take into account evidence showing that the wife was justified in leaving the home which her husband had provided for her." Gans v. Gans, 157 Ky. 776; Purcell v. Purcell, 197 Ky. 632.

The judgment for a divorce from bed and board is merely a decree for a legal separation and may be an-

nulled at any time by the court entering it by consent of the parties.

It remains to determine the amount that should be paid by the husband for the support of the wife and child. When they separated he was the county attorney of Lincoln county and a large part of his income was derived from his office. Since their separation he has ceased to be county attorney and his whole income is derived from his practice as attorney-at-law. He had a small estate and this has been consumed since they separated in the payment of the allowances made herein and his debts previously contracted. The proof is clear that his annual income does not exceed $950.00 a year and that he has no means outside of this. To obtain this income his necessary personal and business expenses must be paid, and these amount to between four and five hundred dollars a year. Under all the evidence an allowance of $500.00 a year for the support of the wife and child, payable monthly in equal installments, is as much as the defendant should be required to pay. The personal property in their home has been delivered to the wife and the home has been sold to satisfy a lien upon it. In Stephens v. Stephens, 194 Ky. 180, where the husband was more able to pay than in this case an allowance of $500.00 a year was held reasonable. It is true this allowance is small, but allowances must be according to the circumstances of the parties. This allowance is more than half of the gross income of the husband and he has no other means of payment.

A careful reading of the record satisfies the court that there was no real cause for the separation of the husband and wife and that the separation was due to a misunderstanding between them of what each really meant or intended. The religion upon which they differed teaches as to husband and wife that they are of one flesh and for this cause shall cleave one to the other, leaving father or mother, brother or sister. The Christ whom they serve allowed only one ground of divorcement. Their child needs the help of both of her parents. The husband and wife are shown by the record to be persons of character and refinement. It does not appear from the record that the husband made any effort at reconciliation or made any effort to induce his wife to return home, although it is said that he thought she left only temporarily.

The allowance we have fixed may be changed by the chancellor from time to time if the circumstances of the parties are altered, and there seems to be no good reason why this broken home should not be restored.

Judgment reversed and cause remanded for a judgment as above indicated.