OSCAR MORALES, Plaintiff and Appellee, *v.* AMÉRICA VÉLEZ, Defendant and Appellant.

No. 10903. Argued July 9, 1953.—Decided February 12, 1954.

*Justo A. Casablanca* for appellant. *A. Quirós Méndez* for appellee.

MR. JUSTICE SIFRE delivered the opinion of the Court.

Appellant was sued by her husband in the Superior Court of Puerto Rico, San Juan Part, in an action of divorce for cruel treatment and grave injury. The essential averments of the complaint having been denied, the case was heard on the merits and a decree rendered declaring the matrimonial bond broken and dissolved and granting· plaintiff the *patria potestas* over his minor daughter, and her custody to the defendant. The latter appealed from the judgment.

The evidence introduced to support the allegations of the complaint consisted· of the testimony of a witness called Vir-

gilio León, and the testimony of plaintiff himself. The former testified that on a certain day of April, 1952, while he was at the police headquarters in Guaynabo, the defendant came in a violent manner and in his presence, addressing plaintiff, told him "whether he believed that with $100.00 that he gave her she could live; that he had to give her at least $125.00 ...," calling him besides "a dirty scoundrel." Plaintiff testified in brief that he is a lieutenant of the police force and that he has been a member of the force for twenty-three years; that he has three children by his marriage to the defendant, two of them whom are of legal age; that he has been "very unhappy" in his marriage, having tolerated his wife's bad temper because of the children; that defendant has constantly harassed him cruelly, without any reason, trying to vex him at all times. For trivial matters she called him an intruder and "cursed his mother" telling him that "she was a stupid old woman"; that she "gave him a restless life" and that such conduct has been continuous, almost always in private; when he arrived home she received him "with a row and insults." Because of defendant's temper he has had trouble with his neighbors, and that in Canóvanas, Trujillo Alto and Guaynabo, in the presence of his subordinates "she would barge into the office, and violently, for any reason," insult him; because of that ill treatment, which he received ever since he married, "since we had our first baby" plaintiff is "constantly in a nervous condition" and "he can hardly work in peace"; he had the misfortune of marrying a woman who has failed to understand him and "who has reached the conclusion that merely because she is my wife, she can mistreat me."

As to the evidence introduced by the defendant, it is enough to state that in her testimony she denied all of plaintiff's averments, and that the witness Emilia Serrano testified that for the last four years she has been a neighbor of the parties in litigation, whom she visited frequently; that

904

the defendant treated her husband nicely; that she never heard her insulting him, nor saw them quarreling; or ever heard plaintiff insulting defendant either, that they treated each other "affectionately."

The appellant prays that we reverse the judgment on the ground that the trial court erred in weighing the evidence and in considering it sufficient to decree the divorce.

■■ In the findings of fact which we shall now enumerate to make the discussion clearer, the trial court sets forth, in part, the following:

(1) "The plaintiff... and the defendant... contracted marriage..., on April 9, 1925 and have begotten during their marriage three children, two of which are of age, and the third daughter... is fourteen years old.

(2) "The plaintiff... has been a member of the Insular Police of Puerto Rico for approximately twenty-three years and at present has the rank of Lieutenant.

(3) "For the last four years, plaintiff has been serving the Insular Police in the towns of Canóvanas, Trujillo Alto and Guaynabo and during that time the defendant has lived in Puerta de Tierra..., mainly because it is convenient for her youngest daughter's education, and the plaintiff came to the house... occasionally, when he had leave or vacation and he gave his wife... the amount of $100 monthly to attend to her needs and those of her daughter.

(4) "The relations between plaintiff and defendant have been tense for some years and the plaintiff, and possibly defendant herself, have endured such difficulties and tenseness without breaking definitively, undoubtedly for their children's sake.

(5) "How did this tenseness and misunderstanding came about? We do not know and the parties have not explained it.

"We conclude, however, taking into consideration our impression of the temper and character of the parties by their conduct in the witness stand and their general composure, that the defendant assumed a bitter attitude towards the plaintiff and he in turn became indifferent and estranged.

(6) "When the plaintiff returned home on his free days, the defendant attacked and insulted him, degrading him in his dignity, and besides because of her bitter disposition she caused

trouble with the neighbors. At times when either he delayed sending the $100 or defendant insisted having the allowance increased, she appeared at the police headquarters where her husband was in service... and in front of his subordinates insulted and provoked him, these incidents having taken place at the police headquarters of Canóvanas, Trujillo Alto and Guaynabo. The last incident was early in April, 1952 at the Guaynabo Station, where, defendant arrived and addressing plaintiff told him sharply that he had to give her more than $100 and called him a dirty scoundrel in the presence of a chauffeur of the municipal government of Guaynabo who was there at the time. On that day two policemen were sleeping in a room next to the main quarters of the station where the incident occurred and the plaintiff later ascertained that they had overheard what took place there.

(7). "Defendant's attitude, in her house as well as when she appeared at the police station where the plaintiff serves or has served, has made him restless to such an extent that he is unable to work in peace, feeling aggrieved and humiliated before his subordinates and harassed everywhere because of the unruly temper of his wife, the defendant."

As to finding 4, the truth is that the defendant objected to the divorce. In connection with No. 5, if the circumstances mentioned therein would warrant the inferences derived therefrom by the trial court, defendant's unruly temper, alone, would not help the plaintiff. *Figueroa* v. *Pierluisi*, 25 P.R.R. 460, 463, 464; 17 Am. Jur., p. 179. Referring to finding 6, we find no ground in the evidence to support the statement that the defendant "attacked" plaintiff when as we have seen, he arrived home occasionally. Neither do we find any basis to support the statement that she "insulted him degrading him in his dignity," for although plaintiff testified that when he arrived home he was insulted, he confined himself to the general expression that the defendant insulted him, without explaining the kind or nature of the insults. The same thing holds as regards the statements made by the trial court in connection with the trouble had with the neighbors, inasmuch as the plaintiff also refers to

them in inaccurate and general terms without giving facts illustrating their nature and importance. It may be noticed that it is stated in the finding under consideration that when the allowance was not received on time or when the defendant insisted that it be increased, she appeared at the station and "insulted and provoked plaintiff," this having occurred in Canóvanas, Trujillo Alto and Guaynabo. However, according to plaintiff himself, on *a single* occasion defendant visited him at the police station to ask him for an increase in the monthly allowance, which incident took place at Guaynabo, shortly before the complaint was filed, on which occasion she called him a "dirty scoundrel," words which by themselves and considered in isolation would not warrant a divorce decree. *Galip* v. *Drag*, 28 P.R.R. 767, 769; *Manich* v. *Quero*, 38 P.R.R. 83, 94. As to the occasions when defendant went to Trujillo Alto and Canóvanas, all that plaintiff said was that the defendant arrived at the afore-mentioned headquarters and sharply *"for any reason"* insulted him, plaintiff having failed again to give the court the facts, as well as the nature of the insults received or their cause.

In view of the former analysis we need not comment on finding 7.

In its conclusions of law the trial court estates that from the moment that a wife fails to use the means that the court mentions to obtain financial support from her husband, and "chooses to employ the coercive means of an unruly and insulting attitude, *if her conduct is continuous and persistent* she may establish a ground for divorce for cruel treatment if, because of her attitude she brings upon her husband such uneasiness, restlessness and suffering that further marital cohabitation becomes intolerable," as in its opinion is the case herein. (Italics ours.) Assuming, without deciding, that the rule of law set forth in that conclusion is correct, we find that the fact on which it is based is lacking, to wit, that the defendant "continually and persistently" used "the coercive

means of an unruly and insulting attitude" to obtain it. We have already said that the plaintiff only mentioned a single occasion when the defendant insulted him because she was demanding an increase in the monthly allowance. Aside from that incident—which took place in Guaynabo—plaintiff referred to none other with that motive. At no time did he say that the marital differences were due to such a cause.

As to the statement charging defendant with "the persistent and continuous" use of the "coercive means of an unruly and insulting attitude," we do not find that it is supported or justified by the evidence. Undoubtedly, the plaintiff testified that the defendant "has constantly harassed him cruelly," trying *"always"* to vex him, and that such treatment was continuous, having endured it for a long number of years, but neither can there be any doubt that such statements lack legal effectiveness, in the absence of evidence regarding the facts and acts which are characterized by plaintiff as continuous and persistent. It has been correctly decided that statements of a witness charging that the defendant in an action for divorce "always" or "continually" did certain things are of little value because they are vague and indefinite. *De Lisi* v. *De Lisi*, 12 A. 2d 468, 470, (Pa.), and that in determining whether there is clear and satisfactory evidence of the wrong which the law treats as justifying cause for decreeing a divorce, the court must be informed what the defendant has done, not what the witnesses may conclude, or what they may regard as the character of his conduct. Edmond's *Appeal*, 57 Pa. 232, 233. Mere general expressions are of no value unless accompanied by the actual facts on which these assertions are based. *Bishop* v. *Bishop*, 30 Pa. 412, 415, *De Lisi* v. *De Lisi, supra*. There can be no doubt as to the importance that the factor of persistence and continuity in the cruel acts and the grave injuries has, when invoking the ground on which the complaint is based, but in the case at bar by the reasons stated,

it was not shown that this factor existed, a thing which is difficult to understand, since the plaintiff complains of a conjugal life which according to him has been a long and painful *via crucis*.

We have decided that "ordinary evidence is not sufficient to break a bond which is the foundation of a fundamental social institution, on the ground of cruel treatment and grave injury," *Manich* v. *Quero, supra*, it being a well-settled rule and traditionally recognized in law that the spouse seeking a divorce on the latter ground has the burden of producing a preponderance of the evidence and making a clear and satisfactory showing. *Manich* v. *Quero, supra; Hanireu* v. *Hanireu*, 26 A. 2d 381, 383 (Md.) ; *Jacobson* v. *Jacobson*, 36 A. 2d 189, 190, (Pa.). Acts of cruelty or indignities must be shown, and it is not enough to support the burden of proof to introduce testimony of witnesses who give their conclusions in that regard or have them testify merely in general terms. Nelson, *Divorce and Annulment*, 2d ed., pp. 292, 293; *Walldren* v. *Walldren*, 63 S.W. 2d 845, 847 (Ark.) ; *De Lisi* v. *De Lisi, supra; Esenwein* v. *Esenwein*, 167 A. 350, 351 (Pa.) ; Edmond's *Appeal, supra*.

■ Marriage may be dissolved by one of the grounds prescribed by the Civil Code. The state does not compel anybody to cohabit if there is a legal ground for divorce, but if the remedy is sought, he who desires it has the burden of introducing evidence to prove the ground that he invokes, which if believed by the judge, has the legal effect of establishing the ground. Plaintiff did not fulfill that duty in the case at bar and we are of the opinion that to decide differently would be tantamount to altering the ground on which divorce is sought.

■ We are perfectly aware of the deference that the findings of fact of the trial court generally deserve, but we are likewise aware of the well-settled doctrine that, when the

evidence is insufficient to support the judgment, the error committed is one of law, and a review by this Court is in order.

The judgment appealed from will be reversed.

Mr. Chief Justice Snyder dissented.

Mr. Justice Belaval concurs in the result.

---

MR. JUSTICE ORTIZ, dissenting.

I dissent from the opinion of this Court. The problem raised in this appeal refers exclusively to the sufficiency of the evidence introduced by the plaintiff to warrant a divorce decree for cruel treatment and grave injury, since the San Juan Court validly decided the conflicting evidence in favor of the plaintiff. I am convinced that the evidence introduced by the plaintiff and believed by the trial court was sufficient to show a case of cruel treatment or grave injury.

Before entering into a discussion of the evidence introduced, we must assume that in order to establish the ground of cruel treatment or grave injury it is unnecessary to show that there has been physical violence or that the plaintiff's health has been impaired. This Court has held that in order to justify an action for divorce on the ground of cruel treatment or grave injury a case of violence or mental suffering which may seriously injure the health of plaintiff must be presented. *Márques* v. *Rivera*, 68 P.R.R. 666; *Figueroa* v. *Pierluisi*, 25 P.R.R. 460. Paragraph 4 of § 96 of our Civil Code establishes two alternative categories, that of cruel treatment and that of grave injury. As to the latter, independently of the cruel treatment, if there is a course of conduct of systematic, persistent and continuous indignities which makes further marital cohabitation for one of the spouses intolerable, and he is deprived of his happiness, a divorce decree issues. It is not essential, to have that situation, that the physical condition of the plaintiff be impaired. It is no longer the case of a physical aggression

which produces concrete injuries to his health. It is the case of a systematic moral or psychic attack which destroys happiness or domestic peace. Impairment of health is not essential in order to bring about an intolerable domestic situation. In those cases of systematic insults or indignities, the majority of the courts in the United States do not require a demonstration that health has been endangered if it is shown that marital cohabitation has become intolerable. Nelson, *Divorce and Annulment*, Vol. 1, p. 221; *Zuerrer* v. *Zuerrer*, 27 N.W. 2d 260; *Barnes* v. *Barnes*, 95 Cal. 171. That is the rule which should be adopted in this jurisdiction. Naturally, a physical violence or a course of conduct that endangers the health of the other spouse, warrants a divorce. We mean that even in the absence of such factors, if the marital cohabitation has become intolerable because of insults or systematic and continuous indignities, a divorce decree would also be justified. 17 Am. Jur. 177.

In *Axtmayer* v. *Ortiz*, 19 P.R.R. 476, 478, it is admitted that the conduct between the parties may be such as to render cohabitation intolerable; it was stated that a divorce decree on the ground of cruel treatment and grave injury issues, if the treatment has been "such as to destroy the peace of mind and happiness of the injured party, to such an extent as to endanger the health or utterly defeat the legitimate objects of the marriage." If there exists a situation of insults, recriminations, humiliations or indignities which are so systematic, continuous, repeated, persistent, constant and habitual that they render married life intolerable and unbearable for the other spouse, then the injuries should be classified as grave and as destructive of the aims of marriage, a divorce decree then being justified. *Harner* v. *Harner*, 206 S.W. 385; *Smith* v. *Smith*, 200 S.W. 1129; *Lampert* v. *Lampert*, 72 S.W. 2d 168; *Purcell* v. *Purcell*, 247 S.W. 760; Nelson, *op. cit.*, p. 220, 226, 229. A continued course of intentional irritation creates a situation in which it seems

probable that there would be further outbursts of bitter temper; *i.e.*, persistence creates a probability of habitual continuation. *Quigley* v. *Quigley*, 38 N.E. 2d 624. The indignities must be so grave and so long-continued as to go beyond the reach of mutual forbearance or forgiveness. *Preas* v. *Preas*, 67 S.W. 2d 1013. The indignities must be more than mere light, inconsequential matters, irritating though they be, and to be serious they must be of such continuity, force or moment as to render one definitely and fundamentally unhappy. *O'Donnell* v. *O'Donnell*, 216 S. W. 2d 764. Under such circumstances, a situation culminates which is valueless to society and intolerable for at least one of the parties. Nelson, *op. cit.*, p. 229.

Whether the injuries are so systematic and continuous that they render marital life intolerable for one of the parties, that is, "intolerableness", is a question of fact to be decided by the court of first instance. *Rogers* v. *Rogers*, 70 S.W. 2d 211; *Tomaier* v. *Tomaier*, (California) 123 P. 2d 548; *Polk* v. *Polk*, (California) 123 P. 2d 550. No specific degree or test can be fixed as to the specific period of time over which the indignities must have persisted, by which the court can gauge the quantum of injury done and felt, since there are no scales of sensibilities. Nelson, *op. cit.*, pp. 211, 215. But the injuries must be such as to indicate in the aggregate that there is fixed purpose and intent or permanency on the one side, and that the continuance of married life is intolerable on the other. Nelson, *op. cit.*, p. 226.

The trial court's findings as to the seriousness of the injuries should be sufficiently supported by the evidence introduced. *Cairo* v. *Cairo*, 87 Cal. App. 2d 558, 197 P. 2d 208. In the case at bar, the evidence introduced by the plaintiff and believed by the trial court substantially shows a situation of indignities and insults committed by the defendant against the plaintiff, in such a continuous, prolonged,

systematic, habitual and persistent manner that married life has become intolerable and unbearable for the plaintiff. That course of conduct which included insults, humiliations and recriminations extended for a period of approximately twenty-three years. Plaintiff's domestic peace was destroyed. Under those circumstances, there is no social utility whatever in maintaining the integrity of a matrimonial life which is void of happiness. The divorce decree rendered by the trial court was correct.

Considering the principle that a continuous and systematic course of conduct of moral and psychic violence injures, occasionally in a greater degree, the matrimonial integrity than physical violence, we shall examine the evidence introduced herein. We must bear in mind that the trial court fully believed plaintiff's testimony which must be considered as wholly truthful for the purposes of this appeal. The plaintiff testified, in part, to the following:

(1) That he has been tolerating the bad temper of his wife ever since he got married; that he has tolerated her because of his children; that she has been *constantly* harassing him cruelly, trying *always* to vex him, accusing him of being an intruder, cursing his mother and saying that she was a stupid old woman *and that this course of conduct has been continuous.*

(2) That upon returning home she received him with insults, rows; that he has had troubles with his neighbors because of her; that on several occasions she went to the police station and sharply insulted him in the presence of the policemen.

(3) That he was constantly under nervous strain and could hardly work at peace; that any triviality meant an insult on her part.

Plaintiff testified therefore, that there had been a continuous and systematic practice of insults which rendered his life intolerable. That, in my opinion, is sufficient to

warrant the breach of the matrimonial bond. This Court holds the opposite, on the basis of two considerations, to wit:

(1) That the statements by the plaintiff are conclusions, and not facts.

(2) That the plaintiff did not prove specific and concrete acts or facts.

Undoubtedly, in my opinion, the insults constitute an objective reality and a concrete fact and not a conclusion. The meaning and connotation of the term "insults" is a subject of general knowledge. If a person has insulted another, that is a concrete fact. An insult is as much a fact as a physical aggression. A conclusion would be a remark on the "seriousness" of the insult, that is, on its relative importance, but not as regards the insult itself. The ultimate fact, that is, the one ultimately inferred from other facts, would be the "grave injury" which would be insufficient as evidence. But the insult is the basic or intermediate fact from which the ultimate fact or conclusion of the "grave injury" may be inferred, just as in an accident, the speed is the basic and intermediate fact from where the ultimate fact or conclusion of "negligence" may be inferred. If a witness testifies that a person has insulted him on several occasions, it implies that several of those acts have occurred on those occasions. It is inferred from the opinion of this Court that the fact would consist in the contents of the insult, that is, in the specific words uttered which may give rise to different inferences as to whether or not such words would constitute an "insult" but, as we have said, the definition of the term "insult" has a generally accepted connotation which is not susceptible of different interpretations and which therefore, has the category of a concrete fact and not of a debatable hypothesis. On the other hand, we have already seen that the question of whether or not a practice of insults is intolerable for the spouse, that is, "intolerableness," is one *of fact* to be decided by the trial court, as was the case herein.

914

As to the alleged need of specifying in detail the insults, it would be unpractical and unfair to ask plaintiff to keep, for more than twenty years, a thorough report of the specific nature of the insults as a prerequisite to the divorce. In the ordinary course of events a person does not remember the days and exact contents of those insults. But the imposition of such a requirement would be the result of the opinion of this Court in the case at bar. It would constitute an unreasonable burden which would render void the efficacy of the statutory ground of "grave injury," in its sense of a continuous practice of insults. Either it would be impossible to prove that ground or plaintiff would have to resort to artificial testimony of doubtful authenticity to prove the details of events which took place several years ago. On the other hand, I am convinced that from a point of view in harmony with the realities of marriage, a general, continuous and systematic practice of insults destroys the integrity of a marriage more than specific, isolated and sporadic acts. Isolated acts are symptoms of the degeneration of the matrimonial bond, but the persistent and habitual course of conduct is degeneration itself which creates an intolerable situation. Specific acts may be condoned and are consistent with reconciliation, but systematic aggressive conduct has a greater tendency to create an intolerable situation which defeats the legitimate ends of marriage. As is held in *Klaus* v. *Klaus*, 156 N.W. 963, where the conduct complained of constitutes a continued course of ill treatment, the particularity of time and place becomes unimportant and generally impractical and should not be required.

At any rate, there was sufficient evidence in this case as to specific acts. Plaintiff himself testified that on several occasions the defendant cursed his mother and said that she was a stupid old woman; that on repeated occasions she called him an intruder; that on several occasions he had trouble with the neighbors on her account (a question of fact) and

that she constantly received him with insults and rows, and that on several occasions she insulted him at the police station. There was testimony that at the Guaynabo station she called him a dirty scoundrel. All that evidence should be considered as true in this appeal and is more than sufficient to characterize specifically and concretely the conduct of the defendant and its effect on plaintiff.

We must remember the generally accepted rule that when an appeal is taken from a divorce decree, the appellate court must give greater weight and efficacy to the judgment of the trial court, not only as to the credibility of the witnesses, but as to the weight and sufficiency of the evidence, and the determination of the judgment by the trial court must not be disturbed unless it is clearly shown that the trial court has committed an abuse of discretion, since the case of whether a divorce should be decreed on the ground of cruel treatment or grave injury is a matter which lies with the sound discretion of the court of first instance, and a divorce decree should not be disturbed on appeal unless it is without any substantial support in the evidence. *McCahan* v. *McCahan*, California, 190 Pac. 460; *Andrews* v. *Andrews*, 120 Cal. 184; *Piatt* v. *Piatt*, 184 Pac. 470; *Davis* v. *Davis*, 207 Pac. 923; *Hansen* v. *Hansen*, 261 Pac. 503; *Dupes* v. *Dupes*, 184 Pac. 425; *Polakoff* v. *Polakoff*, 196 Pac. 778; *Anderson* v. *Anderson*, 204 Pac. 426; *Jenkins* v. *Jenkins*, 265 Fed. 1015; *Hell* v. *Hell*, 289 Pac. 227; *Keener* v. *Keener*, 18 Cal. 2d 445; *Scheibe* v. *Scheibe*, 134 P. 2d 835; *Ungemach* v. *Ungemach*, 142 P. 2d 99; *Serns* v. *Serns*, 161 P. 2d 417. It is only where the divorce decree is without any substantial support in the evidence that it should be set aside. *Dupes* v. *Dupes*, *supra*; *Robinson* v. *Robinson*, 159 Cal. 203. Where the evidence reasonably tends to support the judgment, it will not be disturbed on appeal. *Barker* v. *Barker*, 218 Pac. 812. If a judgment in a divorce suit is not clearly against the weight of evidence it will be affirmed on appeal. *Cox*

v. *Cox*, 261 Pac. 548; *McDaniels* v. *McDaniels*, 4 P. 2d 112. In a divorce action for extreme cruelty, the trial court's judgment of party's susceptibility to cruelty will not be disturbed on appeal. *Speers* v. *Speers*, 287 Pac. 138. A divorce decree will be affirmed on appeal unless the evidence clearly requires a contrary conclusion. *Kiakona* v. *Kiakona*, 36 Hawaii 49. On appeal from a divorce decree, the testimony must be read in the light most favorable to appellee, to affirm the judgment. *Eberly* v. *Eberly*, 36 A. 2d 729. The evidence on appeal must be viewed from the standpoint that will give to it the strongest weight in sustaining the findings of the Court. *Van Camp* v. *Van Camp*, 199 Pac. 885. A conclusion of the trial court that there was cruel treatment cannot be disturbed on appeal unless it is against the preponderance of the evidence. *Klaus* v. *Klaus, supra.* The same rule mentioned above is set forth in 27 C.J.S. 863, 864, 865.

The reason which supports the rule of not disturbing the discretion of the lower court as to the weight and sufficiency of the evidence in divorce cases, is based on the fact that the lower court exercises directly quasi-tutelary functions as to the family relations, including marriage relations, and that said court in representation of the State, is in direct contact with the parties, can gauge and weigh their character, attitude, susceptibility and disposition and is in a better position than the appellate court to weigh the exact circumstances which surround the marriage and to determine the desirability or inconvenience of preserving or severing the matrimonial bond. It may determine directly the realities attending the ground for divorce, the seriousness of the injuries, the cruelty of the treatment and the impact on the psychological integrity of the innocent spouse by a continuous and systematic practice of insults. It may determine whether a specific situation is or is not intolerable or whether domestic peace has or has not been destroyed. Whether such intolerableness or absence of peace is to be

permanent or not depends on the probability of its repetition in the future, that is on the probability that a practice of insults will become habitual. That in turn depends greatly on the temper and disposition of the parties. That is why it has been held in *Payne* v. *Payne*, (16 A. 2d 165) that in divorce cases, where the nature, disposition, mental attitude and temper of the parties are important factors, the decree of the lower court will not be reversed unless it appears to be clearly wrong. See *Kolberg* v. *Kolberg*, 19 N.W. 2d 480. From the former discussion it also appears that in a case of grave injury the essential matter is not the specific indignities, but the probability of their repetition, their tendency to become a systematic course of conduct and their results, that is, whether they render married life intolerable, and this constitutes a question of fact to be decided by the court of first instance.

I am conscious that this Court in the great majority of the occasions when this problem has been raised has decided that a specific conduct has not constituted cruel treatment and grave injury. In some of those cases the realities involved in the marriage relation have been overlooked, and a bond which has lost its reason for being has been artificially preserved on roots which are corrupted and inherently disintegrated. It is neither necessary nor useful, in my opinion, to discuss those cases, nor the multitude of cases decided in the United States. The prevailing rule in each jurisdiction answers the peculiar phylosophy ruling in that jurisdiction as to the desirability of divorce, and as to the emphasis placed on the concept of the indissolubility of the marriage. Without adopting any point of view which might be absolute, since everything is relative to the circumstances of each case, I believe, however, that it is convenient to indicate a general perspective of the problem.

The basic problem in this case refers to the sufficiency of the evidence introduced by the plaintiff to show "the cruel

treatment or the grave injury" asserted as the grounds of divorce in paragraph 4 of § 96 of our Civil Code, that is, whether the findings of fact made by the trial court serve as sufficient basis to sever the matrimonial bond under that Section. The problem is twofold, that is, (1) the meaning of the concept of "cruel treatment" and of "grave injury" and (2) whether the facts in this case place it within those categories. The general phraseology employed by the legislators in referring to "cruel treatment or grave injury" indicate that no test or specific measure has been laid down to define those concepts, leaving each case to be determined according to its own peculiar circumstances within the exercise of sound judicial discretion. Nelson, *Divorce and Annulment*, Vol. 1, pp. 229, 211. But on the other hand, we cannot accept an excessive generalization especially in domestic relations whose creation, nature, and stability meet a manifest public policy and a marked social interest. In this kind of problems it becomes necessary to have a perspective. We cannot overlook the philosophy which inspires the institution of marriage and which determines the destruction of the matrimonial bond. Marriage is not a mere contract, the terms and duration of which are subject to the spontaneous will of the parties. It is also an institution in which the State has an interest. That interest is manifested, not only through the establishment of formalities and prerequisites to the creation of the bond, but also by state intervention through the judicial process in the determination of the specific causes which warrant the expiration of the contract, that is, divorce. That institution is "fundamental in the civil law for it is the foundation of the family." 1 Manresa, *Comentarios al Código Civil Español*, p. 312, sixth edition. It is the foremost cell of society and the creator of the home "borne of mutual love in which there are now innocent children." *Fernández v. Hernández*, 8 P.R.R. 229, 234. It is the legal union of a man and the woman for the

full community of existence. Manresa, *op. cit.*, Vol. 1, p. 313. It is an elevated form of union of two human beings, on the basis of companionship, love and mutual respect. It is the relationship of two personalities who ennoble and enrich each other intellectually and spiritually through the inter-reaction of the individual characteristics of the spouses. Matrimony has a primary object—full personal union—and a secondary object—generation (Miraglia, *Comparative Legal Philosophy*, p. 670), through the orderly channel of the family, all for the benefit of society.

In view of this, the public interest presupposes the stability and reasonable permanence of matrimony. But the "desideratum" of the integrity of the matrimonial bond does not imply that marriage is indissoluble and the legislator has recognized this in establishing certain specific grounds of divorce. The conjugal union is between human beings and if an unhappy situation clearly exists in the matrimony, which renders cohabitation intolerable and unbearable for one of the spouses, the State should not impose the continuation of the union, since, in that case, the very ends of marriage would be frustrated. Marriage has a social end, but its objective is also to serve as a vehicle of companionship, affection, respect and happiness between the spouses. On certain occasions individual interests should be relatively subordinated to social welfare. But, as regards marriage, the social rights should not entail the destruction of the personality of the spouses. Marriage is essential for the achievement of social stability, but it should not be artificially perpetuated to the extent that it becomes a martyrdom. Trivial causes, occasional sallies of passion, passing irritations, which characterize many human relations should be tolerated in marriage and should not be grounds for divorce, in view of the high social and individual objects of the conjugal union. But marriage should not be characterized by permanent sorrow, and it should not imply the artificial im-

position of a mystical renunciation which is tantamount to continuance in a permanent state of unhappiness and of absence of love and mutual respect. True enough, as stated in *Manich* v. *Quero*, 38 P.R.R. 83, 93, divorce is an extreme remedy for an extreme situation and ordinary evidence is not sufficient to break a bond which is the foundation of a fundamental social institution; divorce cannot be turned into an easy road of escape. But in *Axtmayer* v. *Ortiz, supra,* it is admitted that there may be a situation which renders the life of one of the spouses intolerable, and it is stated that a divorce on the ground of cruel treatment or grave injury lies if the conduct is "such as to destroy the peace of mind and happiness of the injured party to such an extent as to endanger the health or utterly defeat the legitimate objects of the marriage."

In *De Burgh* v. *De Burgh*, 39 Cal. 2d 858, decided on November 25, 1952, the following is stated at page 863:

"The deceptive analogy to contract law ignores the basic fact that marriage is a great deal more than a contract. It can be terminated only with the consent of the state. In a divorce proceeding the court must consider not merely the rights and wrongs of the parties as in contract litigation, but the public interest in the institution of marriage. The family is the basic unit of our society, the center of the personal affections that ennoble and enrich human life. It channels biological drives that might otherwise become socially destructive; it ensures the care and education of children in a stable environment; it establishes continuity from one generation to another; it nurtures and develops the individual initiative that distinguishes a free people. Since the family is the core of our society, the law seeks to foster and preserve marriage. But when a marriage has failed and the family has ceased to be a unit, the purposes of family life are no longer served and divorced will be permitted. Public policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed... It is a degradation of marriage and a frustration of its purposes when the courts use it as a device for punishment."

In Nelson, *Divorce and Annulment*, the following is stated at Vol. 1, p. 214, in speaking of cruel treatment or grave injuries:

"Marriage is not, in our time, regarded as the imprisonment of two beasts in a cage for the purpose of breeding, to be separated, if they quarrel, only when the weaker languishes in fear. It is an intellectual and spiritual union for the happiness and welfare of the parties, for nurture and training of children under the most favorable circumstances, for the promotion of health, virtue and morality of the parties and their children, and for the preservation of their homes. ... Nor has the state any interest in preserving the marriage relation where the parties disturb the peace of the community by their quarrels and inhumanity, or where one of the parties can no longer endure the relation without impairing the health; or when the relation has become so intolerable, from insults and indignities, that the parties will not resume cohabitation, and the marriage exists only in name but not in fact."

In consonance with the general principles already outlined, the ground of cruel treatment and grave injury should be clearly established. Occasional ill treatment is not sufficient: the treatment must be cruel. Mere slight and sporadic indignities do not comply with the requisites of the statute: the injuries must be grave. Mere harshness or unruliness of temper or sharp language or passing or fleeting outburst of passion; isolated recriminations; transitory differences and animosity; isolated indignities which are the product of emotional impulses on the spur of the moment, which are forgotten and not everlasting, and which spring from a passing and fleeting state of mind; occasional outbursts of temper or harshness of character which are compatible with love and affection; recriminatory phrases uttered occasionally in moments of excitement, should not be sufficient by themselves to warrant a divorce decree for cruel treatment and grave injury. *Cf. Figueroa* v. *Pierluisi*, 25 P.R.R. 460; *Galip* v. *Drag*, 28 P.R.R. 767, 769; *Fernández* v. *Hernández, supra; Manich* v. *Quero, supra;*

*Elliston* v. *Elliston*, 215 S.W. 63. It is then the case of comprehensible human reactions which are not lasting and which do not show a permanent attitude of hostility to the other spouse. They are emotional outbursts which may produce momentary irritation but which do not injure permanently affection and mutual respect. Those outbursts permit a margin for a reasonable attitude of tolerance and conciliation.

On the other hand, as we have already stated, if the insults are so continuous, systematic and repeated that they render matrimonial cohabitation intolerable, defeating the purposes of marriage, the divorce should be decreed. In the case at bar the trial court concluded that the plaintiff had lost his peace of mind, that the attitude of the defendant was continuous and persistent and that the plaintiff was enduring a situation "of such uneasiness, restlessness and suffering as to render further marital relations impossible." Those are questions of fact which were decided by the trial court. Those conclusions show that the marriage in this case has lost its foundation and its reason for being. We must not preserve it artificially by judicial fiat, so that it serves "as the imprisonment of two beasts in a cage."